**TAYLOR et, Plaintiffs-Appellees, v. SHIELDS,
Defendant-Appellant.**

Ohio Appeals, Second District, Montgomery County.

No. 2163.   Decided December 7, 1951.

194

Froug & Froug, Jack Froug, of Counsel, Dayton, for plaintiffs-appellees.

Coolidge, Becker, Wall & Wood, Pierce Wood, of Counsel, Dayton, for defendant-appellant.

**OPINION**

By HORNBECK, PJ.

This is an appeal on questions of law from a judgment of the Common Pleas Court granting, in part, the relief sought by plaintiffs in their petition. Plaintiffs' next of kin of Leon W. Taylor, deceased, sought to have a deed for certain property described in the petition from Leon W. Taylor to defendant Mary L. Shields cancelled because at the time that the deed was executed the grantor was of unsound mind, incapable of appreciating the nature of the transaction and the defendant exercised undue influence upon Taylor to cause him to make the deed.

On request of counsel the trial judge made separate findings of fact (28) and conclusions of law (8) and thereafter amended findings of fact Nos. 14, 20 & 25 and made additional findings of fact Nos. 29, 30, 31 & 32 and amended conclusion of law No. 4. After judgment, motion for new trial was filed and overruled.

The errors assigned are that the findings of fact, conclusions of law and judgment of the court were not sustained by sufficient evidence and are contrary to law. A. I. That the Court's finding that Taylor "was in poor physical condition, of weak mind and was not clearly capable of thoroughly un-

derstanding and appreciating the nature of a transaction entered into by him on that date with the person standing in a confidential relationship with him," is not sustained by the evidence and is contrary to law and the evidence. A. 2. That the Court's finding that the value of Mrs. Shields promise to provide living quarters for Taylor and his father for the former's life, was only nominal, is not sustained by the evidence and is contrary to law and the evidence. A. 3. The Court's inferential finding that there were circumstances of undue influence and advantage, is not sustained by the evidence and is contrary to law and the evidence. B. The Court's conclusion of law that a confidential relationship existed, is not sustained by its findings of fact; is not sustained by the evidence, and is contrary to law and the evidence. C. The final decree of the Court is not sustained by sufficient evidence, and is contrary to law. II. The Court erred in admitting the testimony of Dr. Abe Perry.

Upon the assignments directed to the insufficiency of proof or that the findings and judgment were against the weight of the evidence, every reasonable intendment must be indulged in favor of the findings if they are consistent one with the other. It would serve no good purpose to elaborate in detail the evidence appearing in the record which is voluminous. We have read it in its entirety and find no one of the assignments of error under 1, AI, 2, 3 & B, well made.

It is urged by the appellant that a confidential relationship between the defendant and deceased Taylor did not appear from the evidence and is not supported by the findings of fact. Many cases are cited wherein the relationship under consideration was held to be confidential and in no one of them do the facts parallel those found in the instant cause. That a confidential relationship could exist between Taylor, the decedent, and Mrs. Shields, is evident. In 15 C. J. S. it is said that the term "confidential relationship":

"is a very broad one, and is not at all confined to any specific association of the parties to it. In its broadest connotation, the phrase embraces those multiform positions in life wherein one comes to rely on and trust another in his important affairs, both technical fiduciary relations and those informal relations which exist whenever one man trusts in and relies upon another. While its more frequent illustrations are between persons who are related as trustee and cestui que trust, guardian and ward, attorney and client, parent and child, husband and wife, it embraces partners and co-partners, principal and agent, master and servant, physician and patient, and, generally, all persons who are associated by any relation of trust and confidence."

It is said that:

"it involves two elements, that of secrecy, and that of trust and confidence;" (15 C. J. S. 822, 823.)

In Addis v. Grange, Illinois Supreme Court, 357 Ill. 127, 192 N. E. 774, 96 A. L. R. 607, the President of a bank was held to be in a fiduciary relationship to a widow under the circumstances there appearing. In the 5th syllabus of this case it is said:

"A fiduciary relation and the duties there involved are not necessarily legal, but may be moral, social, domestic or merely personal."

and in the 6th syllabus:

"A transaction between a party and one toward whom he occupies a fiduciary relationship is prima facie voidable by the latter, and, the relation being established, the burden is upon such party to show absence of undue influence by establishing that the transaction was in good faith upon his part and was equitable and just between the parties."

What constitutes a confidential relationship between parties is a question of fact dependent upon the circumstances of each case.

It appears here that there not only was a close business relationship between Taylor and Mrs. Shields but there was a warm, personal friendship accompanied by marked affection. In certain fields it might be said Taylor would have superior knowledge but in the realm of business Mrs. Shields had superior qualification. She was a white woman, more mature in years than the defendant, a colored man. She had a better education, a wider experience than Taylor and she had been and was at the time of the transaction under consideration successful financially. On the other hand, Taylor had not been able to get ahead in money matters, was in debt, was owing Mrs. Shields a considerable sum of money, his health impaired to the extent that he was not and had not been for a long time gainfully employed and his future offered no reasonable hope for any betterment of his condition. Mrs. Shields was in close and intimate contact with Taylor and it was permissible for the trial judge to infer that she may have appreciated that his expectancy of life was short. Mrs. Shields was well and active. Taylor was and had been for months very ill and rapidly failing in health. His illness had its source in the brain. Admittedly he had a cerebral hemorrhage two days succeeding the signing of the deed. There was evidence that he had another such an attack in July, 1950, and possibly still another at an earlier date. In the transaction immediately involved it appears

that counsel who prepared the deed and escrow agreement was first contacted by Mrs. Shields and given the facts from which these documents were prepared. The purpose to be accomplished by the transaction between the parties as communicated to counsel was to assure Mrs. Shields repayment of money that she had theretofore advanced or would later advance for Taylor. Instead there eventuated an agreement and a deed the result of which was to consummate a sale of the real estate of Taylor to Mrs. Shields in return for which Taylor had the assurance only that his mortgage indebtedness of $3500.00 and his indebtedness to Mrs. Shields of $1865.00 would be liquidated together with the promise of Mrs. Shields to provide quarters for Taylor and his father so long as Leon W. Taylor should live. It is true that Mrs. Shields also agreed to expend $1000.00 in improving the real estate. But this was of no benefit to Taylor. Had Taylor been in normal health, the value of the promise to provide quarters for him and his father would have been substantial but the trial judge had the right to find, as he did find, that in the situation as presented to Mrs. Shields at the time that the deed was executed, this promise on her part was of little consideration to Taylor.

The Court was well within its province in concluding that Taylor had no independent advice respecting his rights under the escrow agreement and the deed. At the time that they were signed Taylor also executed a Will wherein Mrs. Shields was the principal beneficiary, all other bequests in the Will totaling $20.00 and she was made his sole executrix without bond. Prior to the time that the instruments were taken to the home of Taylor he had received no explanation of their purpose or content except that which was given to him by counsel for Mrs. Shields, who was escrow agent, by telephone.

On the occasion when the instruments were signed, which disposed of all of his estate here and hereafter, the total time taken by Taylor to consider their import and effect was fifteen minutes to one-half hour. The trial judge had the right to conclude upon the findings thus developed that Taylor did not appreciate the full import of the deed and escrow agreement when he signed them; that Mrs. Shields was in a superior and dominant position to Taylor not only individually but through her attorney; that Taylor was not on an equal footing with Mrs. Shields.

It is significant also that Taylor as late as July, 1950, expressed a purpose, in his own right, to convert his home into apartments. By the deed and escrow agreement, this purpose was completely abandoned and taken over by Mrs. Shields. This change of purpose further supports the con-

clusion that Taylor may not have understood that he was losing all title to the real estate, all authority as to the conversion of the property into apartments, its rental, the management thereof and the income therefrom.

But is is said that the findings of fact do not support the conclusion of law that there was a confidential relationship between Taylor and Mrs. Shields. Appellants point out particularly findings of fact Nos. 4, 5, 7, 8 & 13 as being all of such findings as could have any bearing upon the conclusion of the confidential relationship of Mrs. Shields to Taylor. There are others for instance Nos. 3, 27 and those pertaining to Taylor's state of health. We are of the opinion that No. 4 as set out in the original conclusions of law and the amendment thereto support the ruling of the Court that the burden rested upon the defendant to prove that the grantor understood the nature and effect of the transaction involved.

Testimony of Dr. A. Perry. Without stating the evidence to support our conclusion we are satisfied that the testimony of Dr. Perry was improperly received. **Sec. 11494-1 GC.** It clearly appears, although Dr. Perry was related by blood to Taylor and received no compensation for his services on behalf of Taylor, he secured the information to which he testified from his relationship as a physician to Taylor, his patient. It is true that he did not thus receive all of his information but the questions propounded required answers based upon the information which he secured from his patient as his physician. He was incompetent to testify in that regard.

A full consideration of the cases upon the admission or rejection of evidence as to privileged communications are set forth in three groups in **Carson v. Beatly, Exrx., etc., 86 Oh Ap 173, 54 Abs 399, 82 N. E. (2d) 745.** The communication to Dr. Perry comes within the first group.

But the determinative question respecting this testimony improperly received, is whether or not it was prejudical to the defendant upon all the facts appearing. In the original findings of fact No. 25 it is said:

"On August 2, 1950, Leon U. Taylor was in poor physical condition, of weak mind, was incapable of knowing and appreciating the nature of the transaction entered into by him on this date and was incapable of being dealt with equitably by a person in a confidential relationship with him."

In the amended finding of fact No. 25, this appears:

"Standing alone without the other facts and circumstances, with respect to his physical condition and relationship to the defendant, surrounding the conveyance of this property, Leon W. Taylor, on August 2, 1950, was sufficiently competent to dispose of his property by deed, but the Court must consider

all of the other evidence in this case, to determine whether or not this conveyance should be set aside under the rules and principles of equity; although on August 2, 1950, Leon W. Taylor was sufficiently competent to dispose of his property by deed, he was in poor physical condition, of weak mind and was not clearly capable of thoroughly understanding and appreciating the nature of a transaction entered into by him on that date with a person standing in a confidential relationship with him."

Upon the testmony of Dr. Perry, Taylor, at the time of the transaction in question and for a considerable period of time prior thereto, was suffering from cerebral neurasthenia, progressive paralysis, was insane and entirely incapable of appreciating the nature of any business transaction and was unable to sign his own name to a document. It is manifest that the Court did not accept this testimony because he finds to the contrary. He also makes a statement to this effect in his written opinion. Upon this whole record it is manifest that the conclusions which the trial judge reached were from testimony from sources other and entirely independent of the evidence offered by Dr. Perry.

The Court held that under all the circumstances appearing, notwithstanding that Taylor had the mental ability to execute the deed under consideration, he acted without full appreciation of its import and effect because he depended upon Mrs. Shields and that the result of the transaction was highly inequitable to Taylor, a condition not realized by him. The Court found no overt fraud but that constructive fraud was established and found no breach of ethics by counsel for Mrs. Shields.

As we have heretofore said, we have resolved the evidence in its most favorable light to appellant. We realize that upon every material issue there was direct conflict in the testimony. Nor are we unmindful that there is much in this record to support a bona fide purpose on the part of Mrs. Shields to act to the benefit of Taylor. For the considerable sum of money which had been advanced to him she had no security whatever prior to the execution of the deed and Taylor could, in probability, have prevented her collection of this money due. It may be that had Taylor lived, Mrs. Shields would have done much more for him than was required under the obligation of the escrow agreement. Be that as it may, the trial judge and this Court had under consideration only the business transactions involved in the deed and the escrow agreement, the relationship of the parties thereto and their effect upon Taylor in the light of the equitable principles controlling.

200

The Court did not err to the prejudice of the defendant in any of the particulars assigned.
The judgment will be affirmed.

WISEMAN and MILLER, JJ, concur.