SMITH, APPELLANT, *v.* FRANK R. SCHONER, INC., APPELLEE.

(No. 4325—Decided January 14, 1953.)

*Messrs. Meade, Weygandt & Leonard,* for appellant.
*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellee.

DOYLE, J.   This action was brought by Russell F. Smith in the Municipal Court of the city of Akron to recover a money judgment against Frank R. Schoner, Inc., a licensed real estate broker.   It was asserted that the claimant was a licensed real estate salesman associated with Schoner, Inc., and that he was entitled to a part of the commission paid to Schoner, Inc., for negotiating the sale of a parcel of real estate.   The trial court, without the intervention of a jury, in consideration of the evidence, entered judgment for the defendant.   An appeal from this final-order brings the case to this court for review.

In our appraisal of the case before us, we must look first to the statutes regulating real estate brokers and real estate salesmen.

Section 6373-26, General Code, provides:

"No person, partnership, association, or corpora-

tion shall act as a real estate broker or as a real estate salesman, or advertise or assume to act as such, without first being licensed so to do as provided in this act.''

Section 6373-25, General Code, in part provides:
''* * * *

''The term 'real estate salesman' shall mean and include any person associated with a licensed real estate broker to do or to deal in any act, acts, or transactions set out or comprehended by the definition of a real estate broker as set forth in this act, for compensation or otherwise.''

Section 6373-48, General Code, provides:

''No right of action shall accrue to any person, partnership, association or corporation for the collection of compensation for the performance of the acts mentioned in Section 6373-25 of the General Code without alleging and proving that such person, partnership, association or corporation was duly licensed as a real estate broker or a real estate salesman, as the case may be, at the time the cause of action arose.''

Keeping before us the above statutes, we next look to the evidence and find that the following conclusions may be reasonably drawn therefrom:

In the year 1949, the plaintiff (appellant here) became associated with the defendant, a licensed real estate broker. He possessed a real estate salesman's license and was entitled to the privileges appertaining thereto, due to his association with the defendant broker. (The statute defining a real estate salesman [Section 6373-25, General Code, *supra*] requires an ''association'' with a licensed real estate broker.) The plaintiff, prior to May, 1950, while associated with the defendant, contacted a Mrs. Hibbard and secured from her an ''open'' listing agreement for the sale of her property for $16,000. Circa May 1, 1950, the plaintiff first showed the property to a Mr. and Mrs. Bacon (the

eventual purchasers), who discussed with him the problems of financing a purchase, as well as the adaptability of the property to a structural change. No agreement was made as to price, nor was a definite offer to purchase made. Subsequently, on May 15, because of disagreement between the defendant and this plaintiff over the subject matter of the Bacon transaction, the plaintiff was dismissed from his employment with the defendant, and his "association" with the broker was terminated. On the following day, May 16, 1950, Mr. Frank Schoner, president of the defendant company, was called to the office of an attorney representing the Bacons, where an offer was made to pay $13,650 for the property. This was the first definite offer of the Bacons to pay a definite price for the property. The offer was accepted by the owners, and a contract of sale was thereupon executed and the sale price set at $13,650. At a later date the price was paid and the property was transferred.

The appellant poses the following *quaere*:

"Can a real estate broker, under the laws of Ohio, employ a salesman who is licensed under the broker, and then discharge the salesman and cancel his license, thereby depriving the salesman of his rights to commissions on prospective transactions on which the salesman had worked before his discharge and which ripened into completed deals after the discharge?"

The authorities generally agree, we think, that, before a real estate salesman or a broker is entitled to a commission, he must bring the buyer and the seller to an agreement. This implies the meeting of the minds of the parties, produced by the agency of the salesman or broker. In other words, a salesman or a broker, employed by a landowner to effect the sale of his property, has earned his commission when he produces a purchaser ready, willing and able to buy upon the

terms prescribed by the landowner. See: *Gilder, Chairman,* v. *Davis,* 137 N. Y., 504, 33 N. E., 599, 20 L. R. A., 398, and cases therein cited; *Pentin* v. *Gonsowski,* 138 Conn., 43, 82 A. (2d), 157; and 6 Ohio Jurisprudence, Brokers, Section 38, *et seq.*

The disputed facts in the case before us would reasonably justify a "trier of the facts" to reach the conclusion that the salesman's efforts fell short of bringing the parties to an agreement within the above rules at the time of his dismissal from the service of his broker.

It seems obvious, from the statute defining the term "real estate salesman," that one who is not "associated" with a licensed broker, even though holding an uncancelled license, is not such a duly licensed "real estate salesman" as to entitle him to a commission for the sale of property resulting from an agreement between the buyer and seller to buy on the seller's terms, arrived at subsequent to the dismissal of the salesman from the association or employment of the broker; at least, where there is no showing of fraud or bad faith, or some similar element indicating that the discharge of the salesman was a mere device to cheat the salesman out of his commission.

In the instant case the cause of action accrued on May 16 (the date that the purchaser agreed to buy on the seller's terms). On May 15th (the date of dismissal) the salesman became no longer a "duly licensed * * * real estate salesman," and as a result "no right of action" could accrue thereafter for him under the limitations contained in Section 6373-48, General Code, *supra.*

In our opinion, the trial court was justified in finding for the defendant under authority of the statutes.

There are cases which hold that, where a principal has the right to terminate the authority of an agent

at any time, such principal may not do so in bad faith and as a device to escape the payment of a broker's commission.

"Thus, if in the midst of negotiations instituted by the broker, and which were plainly and evidently approaching success, the seller should revoke the authority of the broker, with the view of concluding the bargain without his aid, and avoiding the payment of commissions about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal. But if the latter acts in good faith; not seeking to escape the payment of commissions, but moved fairly by a view of his own interest; he has the absolute right before a bargain is made while negotiations remain unsuccessful, before commissions are earned, to revoke the broker's authority, and the latter cannot thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated, and even though, to some extent, the seller might justly be said to have availed himself of the fruits of the broker's labor." *Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y., 378, at pp. 384-385, 38 Am. Rep., 441.

In other words, parties are not allowed to cheat their licensed salesmen by discharging them after a sale has been effected through their agency, and at the same time gather the fruits of their labor.

However, in the case before us, the trial court could properly have found that the action of the broker was not a device to escape the payment of a commission. When he, within his powers, discharged the salesman, a sale had not been effected by the salesman (there had been no offer to buy on the seller's terms), and the trial court would have been justified in finding that no bad faith attended his dismissal.

It is our conclusion that the judgment under review

is neither contrary to law nor manifestly against the weight of the evidence. We find no error prejudicial to the rights of the appellant. This being our conclusion, this judgment will be affirmed.

*Judgment affirmed.*

Hunsicker, P. J., and Stevens, J., concur.