HSING CHOW, Plaintiff,

v.

The UNION CENTRAL LIFE INSUR-
ANCE COMPANY, Defendant.

No. 77 Civ. 1961.

United States District Court,
E. D. New York.

Sept. 29, 1978.

Carl E. Person and Walter C. Reid, New York City, for plaintiff.

Guggenheimer & Untermyer by Robert E. Smith, New York City, for defendant.

## MEMORANDUM AND ORDER

THOMAS C. PLATT, District Judge.

Defendant moves for an order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, dismissing each of the four Counts of the complaint herein on the ground that each Count fails to state a claim against defendant upon which relief can be granted.

This case arises from the termination of defendant Union Central Life Insurance Company's agency relationship with plaintiff Hsing Chow covering the sale of life insurance and annuity contracts in the Chinatown, New York City area and the substitution of one Johnny Fu, a named co-conspirator and alleged former employee of plaintiff's, as the new agent of defendant's for the aforementioned geographical region.

Plaintiff's complaint sets forth four separate claims based on this termination and substitution of agents by the defendant.

Plaintiff predicates this Court's jurisdiction of the first of the four claims on the Sherman Antitrust Act, 15 U.S.C. § 1, Clayton Act, 15 U.S.C. § 15 and 28 U.S.C. § 1337 and predicates this Court's jurisdiction of the last three causes of action on diversity of citizenship, the amount in controversy allegedly exceeding the statutory minimum of $10,000, exclusive of interests and costs, 28 U.S.C. § 1332(a), or in the alternative, on the doctrine of pendent jurisdiction.

Plaintiff alleges that proper venue in this Court is based on 15 U.S.C. §§ 15, 22 and 28 U.S.C. § 1391(b), (c) and the facts that defendant "is an inhabitant of, is found or transacts business in, or has an agent in, the Eastern District of New York or is licensed to do business in the State of New York and is either doing business or licensed to do business in the Eastern District" and that "[t]he interstate trade and commerce in the offering, sale and issuance of life insurance and annuity contracts, and the transmittal of life insurance and annuity premiums, is carried on by defendant in part within the Eastern District. . . . "

As factual background to all four claims, plaintiff alleges in the first sixteen paragraphs of her complaint the following essential facts:

Plaintiff is a citizen and resident of the State of New York and defendant is an Ohio corporation with its principal place of business in the State of Ohio.

Plaintiff has done business in Chinatown, New York City since 1948, the principal place of business for her insurance business being 19 Mott Street, New York, N.Y. She has at all times been licensed as an insurance agent by the State of New York and has at all times been doing business under her own name (even while acting as defendant's agent).

Defendant has an office in this district at 420 Jericho Turnpike, Jericho, New York, as well as in the Southern District of New York at 225 Broadway, New York, N.Y. Defendant is duly licensed to transact business as an insurance company in all parts of the State of New York.

Beginning in 1965, plaintiff entered into an agency relationship with defendant to procure applications for life insurance and annuity contracts in the Chinatown, New York City area, and pursuant to such relationship, plaintiff developed a sales organization and market for defendant's insurance and annuity contracts in the aforementioned geographical area, affiliating with and training numerous Chinese-American and other insurance agents for that purpose. One of these agents who had been hired and trained by plaintiff was one Johnny Fu, a named co-conspirator. From 1965 to 1977, plaintiff, individually and through her sales organization, solicited a substantial number of applications for life insurance con-

tracts which were accepted by defendant and insurance policies were issued thereon. Plaintiff's business with defendant under the agency agreement aggregated more than $40,000 each year in premiums which were paid directly by plaintiff to defendant's main office in Ohio.

Throughout this association with defendant, plaintiff's relationship to defendant was a "confidential relationship" in law pursuant to which plaintiff kept records of all transactions on behalf of defendant and made such records available to the defendant.

In addition to her insurance business, plaintiff also engaged from time to time in several businesses and commercial enterprises complementary and helpful to her insurance business such as an over-the-counter stock brokerage business and an export-import business.

Defendant has unlawfully contracted, combined or conspired with the named co-conspirators in performing or causing the performance of the following acts:

"A. Starting in 1972, Fu, in an attempt to wrest control of plaintiff's insurance business from plaintiff, conspired and combined with defendant through Co-Conspirator Ziff and others and promised defendant that if defendant took away plaintiff's insurance business and gave it to Fu and destroyed plaintiff's business and eliminated her as Fu's competitor in the Chinatown, New York City area, through cancellation of plaintiff's agency contract with defendant, Fu would enrich defendant by increasing the amount of premiums collected by defendant in such Chinatown area;

"B. Pursuant to this . . . conspiracy, Fu, Ziff and defendant interfered with plaintiff's insurance business by deliberately fomenting dissension between plaintiff and members of [her] . . . sales organization and by inducing [her] . . . agents to terminate their relationship with plaintiff and persuading them to do business with Fu . . . ;

"C. As part of such conspiracy, defendant also threatened plaintiff that if [she] . . . did not refrain from and give up all of her non-insurance business and commercial activities, . . . defendant would cancel plaintiff's agency contract and transfer her business and service fees to Fu.

"D. As a result of such . . . conspiracy, defendant was able to place itself in a position where it could (and did in fact) terminate plaintiff's agency agreement with defendant and unlawfully appropriate to itself the good will, income and other fruits of business success which plaintiff had built up over a long period of time, without [any] cost to [the] defendant."

In so doing, defendant has injured plaintiff's business and property in the amount of $500,000.

Based on these alleged facts, plaintiff, for a first claim, alleges that defendant violated § 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, by unlawfully contracting, combining or conspiring with the named co-conspirators "unreasonably to restrain trade and commerce in the business of selling life insurance and annuities."

For a second claim, plaintiff alleges that defendant's actions also constitute a violation of the New York State correlative of the Sherman Antitrust Act, the Donnelly Antitrust Act, New York General Business Law § 340(1).

For a third claim, plaintiff alleges that defendant's actions constituted a "tortious interference and destruction of her business" and were "wilful and malicious and, as a consequence, plaintiff is entitled to punitive damages in the amount of $500,-000."

For a fourth claim, plaintiff claims that defendant's actions amount to a breach of contract in that "defendant in bad faith and as a scheme to escape the payment of such service fees [as were due plaintiff on renewal of prior policies], wrongfully terminated plaintiff's agency contract and used the service fees for its own benefit . . . by keeping a portion of them for itself" and by using a portion of them to provide financing to Fu, to enable him to take over plaintiff's business.

As noted above, defendant has now moved pursuant to FRCP 12(b)(6) for an order dismissing each of plaintiff's four claims for failure to state a claim upon which relief can be granted.

■ With respect to the first claim, the question appears to be whether the allegation of the substitution of one of defendant's insurance agents, Johnny Fu, for another the plaintiff, as head of a local agency, as part of a conspiracy between the company and the substituted agent to destroy plaintiff's business, states a claim under Section 1 of the Sherman Act.

In this regard, the cases uniformly hold that (i) a company has the right to select a person with whom it does business and to refuse to deal or continue to deal with anyone for reasons sufficient to itself, *United States v. Colgate & Co.,* 250 U.S. 300, 307, 39 S.Ct. 465, 63 L.Ed. 992 (1919); *Oreck Corporation v. Whirlpool Corporation et al.,* 579 F.2d 126, 133 (2d Cir. 1978); *Bowen v. New York News, Inc.,* 522 F.2d 1242, 1254 (2d Cir. 1975); and (ii) a refusal to deal becomes illegal under the Sherman Act only when it produces an unreasonable restraint of trade, such as price fixing, elimination of competition or the creation of a monopoly. *United States v. Parke, Davis & Co.,* 362 U.S. 29, 42–47, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960); *Oreck Corporation v. Whirlpool Corporation et al.,* 579 F.2d at 133; *House of Materials, Inc. v. Simplicity Pattern Co.,* 298 F.2d 867, 870 (2d Cir. 1962); *Diehl & Sons, Inc. v. International Harvester Co.,* 426 F.Supp. 110, 119 (E.D.N.Y.1976).

More specifically in the context of substitution of distributors or agents, the case law is also clear in stating that the mere substitution of one agent or distributor for another does not in and of itself state a violation of the Sherman Antitrust Act, precisely because there has been no lessening of competition within the relevant markets. *Ace Beer Distributors, Inc. v. Kohn, Inc.,* 318 F.2d 283, 287 (6th Cir. 1963), *cert. denied,* 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963); *Burdett Sound, Inc. v. Altec Corp.,* 515 F.2d 1245 (5th Cir. 1975); *Roth Office Equipment Co. v. G F Business Equipment Co.,* [1975] 2 Trade Reg.Rep.

(CCH) ¶ 60,563. Indeed the courts have consistently reached this conclusion notwithstanding the fact that the terminated agent or distributor may suffer a complete loss of business as a result or that the termination may have been encouraged by the new agent and distributor.

Thus, in *Burdett Sound, Inc., supra,* the Court of Appeals for the Fifth Circuit summarily dismissed a claim similar to the one herein, noting that (515 F.2d at 1249):

"it is simply not an antitrust violation for a [company] to contract with a new distributor, and as a consequence to terminate [its] relationship with a former distributor, even if the effect of the new contract is to seriously damage the former distributor's business."

In *Ace Beer Distributors, Inc., supra,* the Court of Appeals for the Sixth Circuit held that (318 F.2d at 286–287):

"In essence, the complaint charges that the defendants conspired to destroy plaintiff's business and to eliminate it as a beer distributor in interstate commerce and that this result was accomplished by the termination by Stroh of plaintiff's franchise as its beer distributor and thereafter conducting its business through another distributor. Paragraphs 13 and 17 of the complaint.

"That, without the results proscribed by the Sherman Act, is not a violation of the Act. A manufacturer has a right to select its customers and to refuse to sell its goods to anyone, for reasons sufficient to itself. * * * A refusal to deal becomes illegal under the Act only when it produces an unreasonable restraint of trade, such as price fixing, elimination of competition or the creation of a monopoly. * * * The fact that a refusal to deal with a particular buyer without more, may have an adverse effect upon the buyer's business does not make the refusal to deal a violation of the Sherman Act. Damage alone does not constitute liability under the Act.

"The present case does not involve price fixing. Nor does it involve an attempt to create a monopoly. The Stroh

Brewery Company had one distributor in the territory under consideration before it terminated the plaintiff's franchise. It continued to have only one distributor thereafter. There is no allegation or contention that the beer of other breweries was not just as available in that area after the change in distributors as it was before. * * *

"Unless it can be said that the refusal to deal with plaintiff had the result of suppressing competition and thus constituted 'restraint of trade' within the meaning of Section 1 of the Sherman Act, there is no violation of the Act. We do not think that the substitution by Stroh Brewery Company of one distributor for another had this result.

"It is well settled that the 'restraint of trade' referred to in Section 1 of the Act, means only unreasonable restraint of trade, in that, as the cases point out, every commercial contract has some restraining effect upon trade. * * * The substitution of one distributor for another in a competitive market of the kind herein involved does not eliminate or materially diminish the existing competition of distributors of other beers, is not an unusual procedure, and, in our opinion, is not an unreasonable restraint of trade. * * * " (Citations deleted.)

Plaintiff has made no specific allegations of anti-competitive effects in the insurance industry in Chinatown flowing from her termination; she has only alleged that she personally has been put out of business. Her conclusory allegation that this unreasonably "restrained trade and commerce in the business of selling life insurance and annuities" is insufficient and unsupported by her other factual allegations. Indeed, the competitive balance in the relevant market would not appear to have been reduced or otherwise affected by plaintiff's termination since Johnny Fu, her previous agent and thus a non-competitor of plaintiff's, will continue the agency as before. In the absence of any anti-competitive ef-

fect, plaintiff cannot sustain her Sherman Act claim on the facts presented here.

In response to this conclusion, plaintiff argues that her first claim is supported in law by the theory of the so-called *Pick-Barth* cases. *See, Albert Pick-Barth Co. v. Mitchell Woodbury Corp.*, 57 F.2d 96 (1st Cir. 1932), *cert. denied*, 286 U.S. 552, 52 S.Ct. 503, 76 L.Ed. 1288 (1932); *Atlantic Heel Co. v. Allied Heel Co.*, 284 F.2d 879 (1st Cir. 1960). *But see, George R. Whitten Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d 547 (1st Cir. 1974), *cert. denied*, 421 U.S. 1004, 95 S.Ct. 2407, 44 L.Ed.2d 673 (1975), or in the alternative, *Taxi Weekly, Inc. v. Metropolitan Taxicab Board of Trade*, 539 F.2d 907 (2d Cir. 1976). This Court is unpersuaded by either of these two alternative justifications for plaintiff's first claim.

Defendant points out in its reply that the *Pick-Barth* doctrine, which purportedly held that "unfair competitive practices accompanied by an intent to hurt a competitor constitute[d] per se violations of the antitrust laws," (*George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.*, 508 F.2d at 561,) has been, for the most part if not completely, overruled by the *Whitten* case. *See also, Craig v. Sun Oil Co.*, 515 F.2d 221, 224 (10th Cir. 1975).

Also, as defendant points out, the facts in the case at bar are distinguishable from those in the *Pick-Barth* cases. Those cases, unlike this case, involved conspiracies by manufacturers or suppliers which obviously restrained competition and injured the public by restricting the availability of choice for customers seeking to purchase the particular product. That these distinctions were material was recognized and acknowledged by the Court of Appeals for the Tenth Circuit in the *Perryton* case [1] which held (353 F.2d at 622):

"In our opinion the distributorship cases are not applicable here. The success of the conspiracy in those cases resulted in the substitution of one distributor for an-

---

1. *Perryton Wholesale, Inc. v. Pioneer Distributors Company of Kansas, Inc.*, 353 F.2d 618 (10th Cir. 1965).

other. This changed the identity of a competitor but did not eliminate competition."

See also, Marder v. Conwed Corporation, 378 F.Supp. 109, 111 (E.D.Pa.1974); B & B Oil & Chemical Co. v. Franklin Oil Corp., [1969] Trade Reg.Rep (CCH) ¶ 72,737.

Similarly, the Second Circuit Court of Appeals decision in Taxi Weekly, Inc. is not controlling here. In that case the Court of Appeals for this Circuit held that there was sufficient evidence to support a finding that the defendant taxicab fleet owners, acting individually and as officers of their trade association, had formed a business and that this constituted a violation of the Sherman Antitrust Act. The Court, however, expressly distinguished the distributorship cases as follows (539 F.2d at 913):

"[O]n the facts of this case, Taxi Weekly was not the house organ of the New York cab industry and, therefore, we must reject the fundamental premise of the fleet owners' argument, i. e., the asserted similarity between Taxi Weekly's status as an official trade paper and the situation of the exclusive distributorships in [Joseph E.] Seagram [& Sons, Inc. v. Hawaiian Oke & Liquors, Ltd., 416 F.2d 71 (9th Cir. 1969)] and Cartrade [Inc. v. Ford Dealers, 446 F.2d 289 (9th Cir. 1971)]. Taxi Weekly was an independent, closely-held, corporation owned by private shareholders with no connection to the cab industry." (Emphasis added.)

In the instant case, however, there is no indication that plaintiff is anything other than an agent of defendant. Moreover, as noted above, there is also no specific allegation of any adverse impact on competition flowing from her termination and the installation of Johnny Fu as defendant's new agent. Indeed, it would appear that the facts as alleged could not support any such allegation. Given this, the distributorship cases discussed above clearly apply and plaintiff's first claim under the Sherman Antitrust Act must accordingly be dismissed.

■ For the same reasons set forth above, plaintiff's second claim also fails to state a claim under New York's Donnelly Act. Application of the Donnelly Act, which is patterned after the Sherman Act, is governed by the same standards developed under the federal antitrust acts. See, State of New York v. Mobil Oil Corp., 38 N.Y.2d 460, 463, 381 N.Y.S.2d 426, 428, 344 N.E.2d 357, 359 (1976). Therefore, there being, as noted above, no federal antitrust claim and indeed no factual allegation of any adverse impact on competition, plaintiff's second claim must also be dismissed as legally insufficient.

■ With regard to plaintiff's third claim, defendant is correct in maintaining that it cannot be held liable for wrongfully inducing its own breach of its own contract, nor for conspiracy with a third party aimed at inducing such a breach, but it is incorrect in its argument that plaintiff does not state a claim in prima facie tort. While plaintiff's pleadings in this regard are ambiguous, she does allege that defendant's conduct was "wilful and malicious" and her proof may well bear out all the requisite elements of a prima facie tort. As noted by defendant, this would ordinarily require proof of malice, see, Rosenberg v. Del-Mar Division Champion International Corp., 56 A.D.2d 576, 391 N.Y.S.2d 452 (2d Dept. 1977), as well as allegations and proof of special damages, see, Bohm v. Holzberg, 47 A.D.2d 764, 365 N.Y.S.2d 262, 264 (2d Dept. 1975). The failure of plaintiff to specifically plead these elements however is not necessarily fatal to her claims under the more liberal Federal Rules of Civil Procedure. Moreover, as noted by plaintiff, her third claim may well encompass a claim based on defendant's interference with her contractual relations with her agents, and in particular with Johnny Fu. As noted by plaintiff, if the alleged confidential relationship between herself and defendant did exist, recovery for this tort may not require proof of malice. See, A. S. Rampell, Inc. v. Hyster Co., 3 N.Y.2d 369, 376–77, 165 N.Y.S.2d 475, 481–82, 144 N.E.2d 371, 375–76 (1957). In summary, while plaintiff's third claim might have been more carefully pled, it cannot be dismissed since it arguably encompasses viable tort claims.

Plaintiff's fourth claim is for breach of contract, a copy of which is annexed to an affidavit filed in support of defendant's moving papers. While defendant's motion to dismiss this claim raised questions of fact as to contract interpretation which are technically not susceptible to a 12(b)(6) motion, the Court may and does treat this portion of defendant's motion under FRCP 56. Thus, the Court takes note of the fact that by its terms plaintiff's agency contract was of indefinite duration and could be "terminated at the option of [defendant] or [plaintiff] on written notice." Art. 13, Agreement between Union Central Life Insurance Company and Hsing Chow. According to the uncontradicted affidavit of Peter Browne, defendant's New York manager, defendant exercised its right of termination by written notice dated May 20, 1977 to plaintiff terminating plaintiff's agency as of June 1, 1977. While the contract ostensibly gives defendant and plaintiff the right to terminate with appropriate written notice, a question exists as to whether a bad faith termination might nevertheless be actionable by the plaintiff. In this regard, Ohio law, which the parties have, by contract, designated as the applicable law in this context, is ambiguous. While, as defendant points out, it has been held in *Green Bay Auto Distributors, Inc. v. Willys-Overland Motors, Inc.,* 102 F.Supp. 151 (N.D.Ohio 1951), that there was no good faith limitation on an unrestricted termination clause in an exclusive distributor sales agreement of indefinite duration, it has also been held by an Ohio Appeals Court that "where a principal has the right to terminate the authority of an agent at any time, such principal may not do so in bad faith and as a device to escape the payment of a broker's commission." *Smith v. Frank R. Schoner, Inc.,* 94 Ohio App. 308, 311–12, 115 N.E.2d 25, 27 (1953). *See also, Randolph v. New England Mutual Life Insurance Co.,* 526 F.2d 1383 (6th Cir. 1975). This Court chooses to follow the *Smith* case as the clearest and indeed only expression of an Ohio court on this question of law and accordingly holds that plaintiff's fourth claim, which does allege a bad faith termination aimed specifically at avoiding the payment of service fees to the plaintiff, states a valid claim which cannot at this time be dismissed.

In conclusion, this Court finds that plaintiff's first two claims based on alleged violations of federal and state antitrust laws must be dismissed for failure to state a claim upon which relief can be granted. Plaintiff's last two claims, however, do state valid claims for relief and therefore must be at this time sustained, this Court having jurisdiction over such claims by virtue of diversity of citizenship. 28 U.S.C. § 1332(a).

Submit Order.