The **PRUDENTIAL INSURANCE CO.,** Plaintiff,

v.

**Leslie H. ESLICK,** Defendant.

**No. C–1–82–1434.**

United States District Court, S.D. Ohio, W.D.

May 17, 1984.

---

**76.** 78 Cong.Rec. 8964 (1934).

**77.** *See United States v. Rutherford,* 442 U.S. 544, 553–54, 99 S.Ct. 2470, 2475–76, 61 L.Ed.2d 68 (1979).

Virginia Conlan Whitman, Cincinnati, Ohio, for plaintiff.

Leo J. Breslin, Cincinnati, Ohio, for defendant.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

SPIEGEL, District Judge:

This matter is before the Court on plaintiff's motion for partial summary judgment (doc. 10), defendant's memorandum in opposition (doc. 14), and plaintiff's reply memorandum (doc. 21). In addition, the Court has the benefit of the oral arguments presented by counsel.

This case involves a dispute arising from an employment relationship between the plaintiff, The Prudential Insurance Co. (Prudential), and the defendant, Leslie H. Eslick. The uncontroverted facts are as follows. Eslick was employed by Prudential as a life insurance salesman and was associated with Prudential's Queen City Agency in Cincinnati, Ohio from April 7, 1969 to May 24, 1982. During this period, Prudential provided Eslick with office space, office supplies, equipment and services. Although in the employ of Prudential, Eslick sold products of other companies to Prudential policyholders, yet he always fulfilled the minimum production standards as defined in his employment contracts with Prudential. On May 24, 1982, Prudential terminated its contract with Eslick. It is this termination that gives rise to the instant litigation.

The parties disagree, of course, as to the reasons for Eslick's termination. However, it is clear that whatever reasons exist are based at least in part on Eslick's sale of a competitor's Individual Retirement Accounts (IRAs) to orphan Prudential policyholders.[1] The orphan policyholders, allegedly at Eslick's suggestion, purchased the IRAs with the accumulated cash values of their Prudential policies. Plaintiff Prudential contends that these sales constituted a breach of both Eslick's employment contract and his fiduciary duty, as well as

---

1. "Orphan" policyholders are those whose agent is no longer with the Queen City Agency. However, the Queen City Agency continues to service the "orphan" policies.

unlawful interference with advantageous contractual relationships, unfair competition, and conversion of trade secrets. Defendant Eslick perceives the termination differently, and has filed ·a counterclaim alleging wrongful termination, tortious interference with advantageous business affairs, libel, slander, and unjust enrichment. Plaintiff Prudential has moved for summary judgment on the following issues:

    1.  The Prudential Insurance Company of America had the right to terminate the contract of Leslie H. Eslick as a matter of law without incurring any liability, therefore; and

    2.  Defendant Leslie H. Eslick was an agent of the Prudential Insurance Company of America, and owed to the Prudential Insurance Company of America a fiduciary duty which fiduciary duty Eslick breached; and

    3.  Defendant may not recover damages under any theory of unjust enrichment.

(doc. 10).

■ In considering a motion for summary judgment, the narrow question we must decide is whether there is "no genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issue as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1979) (emphasis original). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he district court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before

[the] court." *Id.*, quoting Rule 56(c), Fed. R.Civ.P. Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.*

With the standard above in mind, we have consulted pertinent legal authority, examined the exhibits submitted in conjunction with plaintiff's motion, and considered the arguments of counsel. For the reasons that follow, we conclude that plaintiff's motion for partial summary judgment must be denied.

■ We deal first with the agency prong of plaintiff's motion for summary judgment, as the issues there involved necessarily impact the issue of whether Prudential can terminate Eslick's contract without incurring any liability. We think that there clearly remains a genuine issue of material fact regarding the relationship between Eslick and Prudential. While the contract between these two entities characterizes Eslick as an independent contractor, Prudential now seeks a legal determination that Eslick was in fact its agent. Under Ohio law, the nature of an employment relationship such as agency or an independent contractor arrangement must be determined through a comprehensive factual analysis. *See N & G Construction, Inc. v. Lindley*, 56 Ohio St.2d 415, 384 N.E.2d 704 (1978); *Duke v. Sanymetal Products Co., Inc.*, 31 Ohio App.2d 78, 286 N.E.2d 324 (1972). Accordingly, plaintiff's motion for summary judgment insofar as it seeks to establish an agency relationship with Eslick is denied.

■ Similarly, we conclude that factual questions concerning the existence, nature and breach of any fiduciary duty that Eslick may have owed Prudential render summary judgment inappropriate. If it develops that Eslick was an agent of Prudential, then he clearly owed a duty of good faith pursuant to the reciprocal duties of good faith contemplated in *Randolph v. New England Life Ins. Co.*, 526 F.2d 1383 (6th Cir.1975) (construing Ohio law). Furthermore, this duty of an agent towards a principal may be fairly characterized as

fiduciary in nature. *See e.g. Miles v. Perpetual Savings & Loan Co.,* 58 Ohio St.2d 93, 95, 388 N.E.2d 1364, 1365 (1979).

■ However, if Eslick is not an agent, he may still owe Prudential a fiduciary duty. Under Ohio law a de facto fiduciary relationship may result from a confidential relationship. *See Walters v. First National Bank of Newark,* 69 Ohio St.2d 677, 433 N.E.2d 608 (1982); *Stone v. Davis,* 66 Ohio St.2d 74, 419 N.E.2d 1094 (1981), *cert. denied sub nom Cardinal Federal Savings & Loan Ass'n v. Davis,* 454 U.S. 1081, 102 S.Ct. 634, 70 L.Ed.2d 614 (1981); *Umbaugh Pole Building Co. v. Scott,* 58 Ohio St.2d 282, 390 N.E.2d 320 (1979); *Indermill v. United Savings,* 5 Ohio App.3d 243, 451 N.E.2d 538 (Summit Cty.1982); *Taylor v. Shields,* 64 O.L.A. 193, 111 N.E.2d 595 (Montgomery Cty.Ct.App.1951). A confidential relationship is defined as:

> One in which one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic or merely personal.

*Indermill v. United Savings,* 5 Ohio App.3d 243, 245, 451 N.E.2d 538, 541 (Summit Cty.1982) (quoting *Taylor v. Shields,* 64 O.L.A. 193, 111 N.E.2d 595). The more recent cases that discuss de facto fiduciary relationships indicate that such a duty may arise from one party's superior conversance in the subject matter of the transaction. *Walters,* 69 Ohio St.2d at 679, 433 N.E.2d at 610 (fiduciary duty imposed on bank due to its superiority in knowledge of loan processing). Conversely, the Ohio Supreme Court has declined to find a de facto fiduciary relationship in a commercial lending context where parties act at arms length, each seeking to protect its own business interest. *Umbaugh,* 58 Ohio St.2d at 74, 419 N.E.2d at 1094.

■ We express no opinion at this time as to how these cases apply to the facts of this case. However, we note that the existence of a de facto fiduciary relationship is a question of fact and depends on the circumstances of each case. *See e.g., Taylor v. Shields,* 64 O.L.A. 193, 196, 111 N.E.2d 595, 597. Therefore, we conclude that factual issues remain concerning agency and de facto fiduciary relationships. Furthermore, once these issues are resolved and the duty has been defined, whether such a duty, if any, has been breached may well necessitate additional factual analysis. Therefore, we cannot conclude, as a matter of law, that Eslick breached a fiduciary duty owed to Prudential.

If Eslick owed no fiduciary duty to Prudential, then the respective duties of the parties are defined by the Career Special Agent's Contract (doc. 10, exh. 1).[2] How-

---

2. The Career Special Agent's Contract provides in pertinent part:

Section 1

\*　　\*　　\*　　\*　　\*　　\*

The Agent's duties shall be:

(a) Authority. To solicit and procure applications for all types of insurance policies and annuity contracts issued by the Company, other than monthly premium debit insurance, provided the Agent is properly licensed and approved by the Company.

(b) Subsidiary Companies. If specifically authorized, the Agent may also solicit and procure applications for all insurance policies and contracts written by subsidiary companies of the Prudential Insurance Company of America, or its' subsidiaries.

Unless specifically noted to the contrary in any such authorization, the provisions of this Contract will apply to any business placed with a subsidiary company. The term "Company" hereinafter will include any subsidiary company.

(c) Moneys Collected. To hold all moneys collected on behalf of the Company as trust funds and immediately turn them over to the Company without deduction.

(d) Activity. To operate primarily as a full time life insurance salesperson for the Company.

(e) Policyholder Service. To render all service incidental to the maintenance and care of the Company's business which may be required by the policyholders or by the Company.

\*　　\*　　\*　　\*　　\*　　\*

Section 6

\*　　\*　　\*　　\*　　\*　　\*

(f) Independent Contractor. It is the intention of the parties that the Agent be an independent contractor and not an employee of the Company. The Agent shall make every reasonable effort to function as a full time life insurance sales person for the Company within the meaning of Section 3121 of the *Internal Revenue Code of 1954* as it may be amended from time to time. None of the terms of this

ever, as alluded to in the discussion of the agency issue above, the nature of the contract, as an agency contract or otherwise, provides additional definition of the duties called for in the contract. More specifically, if the Career Special Agent's Contract is an agency contract, it includes reciprocal duties of good faith. *Cf. Randolph v. New England Mutual Life Insurance,* 526 F.2d 1383 (6th Cir.1975). It is this possibility that precludes the granting of summary judgment on the issue of whether Prudential could terminate Eslick's contract without incurring any legal liability.

As regards Prudential's liability for terminating Eslick's contract, we think that applicable Ohio law on this issue is clearly delineated in Judge Peck's opinion in *Randolph,* 526 F.2d 1383. There, in reversing the district court's grant of a motion for summary judgment, the Court reasoned that:

> Ohio courts would require a resolution of the issue created by an allegation of bad faith (in the absence of an express provision permitting termination in bad faith), in an action concerning an agency contract with the principal and agent owing each other reciprocal duties of good faith.

526 F.2d at 1383. From this statement it follows that, if Eslick's contract with Prudential was an agency contract, then Prudential could exercise the terminable at will clause without incurring legal liability only as long as that exercise was not in bad faith. If such exercise was in bad faith then Eslick can challenge the termination under the contract.

Prudential objects to the application of *Randolph* in the instant case on two grounds. First, Prudential argues that the bad faith contemplated in *Randolph* relates only to a termination effected to deprive the agent of sales commissions. Second, Prudential argues that even if the concept of bad faith embraces a wider range of conduct, Eslick has failed to present sufficient allegations to support such a claim. We find neither argument persuasive.

As regards the bounds of bad faith, we think that bad faith in the termination of an agency contract is not limited to the employer's wrongful withholding of sales commissions. As we read *Randolph* and supporting Ohio case law, bad faith is a broader concept that includes such wrongful withholding of commissions. For example, in *Smith v. Frank R. Schoner, Inc.,* 94 Ohio App. 308, 115 N.E.2d 25 (Summit Cty. 1953), the court stated:

> Where a principal has the right to terminate the authority of an agent at any time, such principal may not do so in bad faith *and* as a devise to escape the payment of a broker's commission.

94 Ohio App. at 311–12, 115 N.E.2d at 27 (emphasis added). If bad faith and wrongful withholding of commissions were coterminous, then the conjunction "and" would be unnecessary in this passage. Therefore, we conclude that bad faith in the termination of an agency contract is not limited to wrongful withholding of sales commissions.

Prudential objects to this analysis and argues that it imposes on it a burden to show just cause for Eslick's termination. We disagree. We think the practical effect of our interpretation of the bad faith concept is to require Eslick to prove his contract was terminated in bad faith. It follows that Prudential could still exercise the termination clause for just cause or for no cause. The only restriction on the exercise of the terminable at will clause is that it not be exercised in bad faith.

We also disagree with plaintiff's contention that Eslick has failed to produce allegations sufficient to support his claim of bad faith. Defendant has filed his affida-

---

Contract shall be construed as creating a common-law employer-employee relationship.

\*  \*  \*  \*  \*  \*

Section 7

\*  \*  \*  \*  \*  \*

(b) Contract Termination. This Contract may be terminated by either party by a notice in writing delivered personally, or mailed to the other party at the last known address.

vit as well as the affidavit of Paul Benedict as attachments to his memorandum in opposition to plaintiff's motion for summary judgment. When read together, these items support Eslick's claim that he was terminated for encouraging orphan Prudential policyholders to use accumulated cash values from their Prudential policies to buy a competitor's IRAs, and that the termination was effected for this reason despite the absence of any company or agency policy against such a practice at the time Eslick made the sales. We are convinced that these allegations of *ex post facto* application of company policy are adequate support, at this juncture, for Eslick's claim that Prudential terminated him in bad faith.

The last aspect of the bad faith analysis for our consideration is whether Eslick may recover damages on the theory of unjust enrichment. In *Ullmann v. May*, 147 Ohio St. 468, 72 N.E.2d 63 (1947), the Ohio Supreme Court held that

> In the absence of fraud or bad faith, a person is not entitled to compensation on the ground of unjust enrichment if he received from the other what it was agreed between them the other should give in return.

*Id.* (syllabus 4). The Ohio Supreme Court recently reiterated this standard in *S & M Constructors, Inc. v. City of Columbus*, 70 Ohio St.2d 69, 71, 434 N.E.2d 1349, 1351 (1982). Furthermore, this rule was applied to preclude recovery on the grounds of unjust enrichment in *Randolph v. New England Mutual Life Insurance Co.*, 526 F.2d 1383, 1387 (6th Cir.1975). *Randolph* involved facts similar to the instant case, insofar as both entail an insurance firm parting company with its sales personnel. In *Randolph*, the Court held that the plaintiff's unjust enrichment claim, which was premised on the bad faith of the insurance company, was coextensive with plaintiff's contract claim (*i.e.*, that the insurance company terminated the agency relationship in bad faith and therefore in violation of the reciprocal duties of good faith inherent in the agency relationship). Because the unjust enrichment claim was no broader than the legal claim, the court concluded that plaintiff possessed an adequate remedy at law and should not be permitted to proceed on the equitable claim of unjust enrichment. *Id.*

■ We would readily reach the same result as *Randolph* save one significant factual distinction; the relationship between the insurance company and the sales personnel is at issue in the instant case, whereas in *Randolph* the agency relationship was not disputed. The dispute concerning the relationship between Prudential and Eslick impacts the existence of Eslick's contract claim based on bad faith. As delineated above, this contract claim arises from the reciprocal duties of good faith that flow from an agency contract. However, if Eslick is not an agent, then under the *Randolph* analysis he has no contract claim based on bad faith. However, as noted above, allegations of bad faith or fraud will support a claim for unjust enrichment. *See S & M Constructors, Inc.*, 70 Ohio St.2d 69, 71, 434 N.E.2d 1349, 1351 (1982); *Ullmann*, 147 Ohio St. 468, 72 N.E.2d 63 (1947). If Eslick is not an agent and consequently has no contract claim based upon bad faith, then his unjust enrichment claim, which is equitable in nature, is broader than his contract claim and is not barred by the reasoning of *Randolph*. As this possibility remains as long as Eslick's relationship with Prudential remains in dispute, we cannot now conclude that Eslick cannot recover on the theory of unjust enrichment.

■ To summarize, we conclude that the nature of the relationship between Prudential and Eslick remains as a factual issue. If there is a principal and agent relationship, then Eslick owed Prudential a fiduciary duty; however, the issue remains whether that duty was in fact breached. If Eslick was not Prudential's agent, he may nevertheless have owed Prudential a fiduciary duty. Whether such a de facto duty was owed is a factual question. Additionally, if a de facto fiduciary duty existed

whether that duty was breached is a factual question.

If Eslick owed Prudential no de facto fiduciary duty, then the duties of both parties are defined by the contract. If the contract represents an agency contract, it contains reciprocal duties of good faith, and Eslick may pursue a contract claim based on bad faith. However, if the contract does not represent an agency contract, then no reciprocal duties of good faith flow from it. In this situation, Eslick's equitable unjust enrichment claim is broader than his legal contract claim and is not precluded because he then has no adequate remedy at law.

Accordingly, for the foregoing reasons we exercise the caution indicated appropriate in *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.1975), and the plaintiff's motion for partial summary judgment is hereby denied.

SO ORDERED.