INDERMILL ET AL., APPELLANTS, *v.* UNITED SAVINGS, N.K.A. TRANSOHIO SAVINGS, INC., APPELLEE.

.(No. 10612—Decided August 4, 1982.)

*Mr. Ronald M. Martin* and *Mr. Hal F. Bowers,* for appellants.

*Mr. Robert M. Gippin* and *Mr. Stephen M. Hammersmith,* for appellee.

BELL, J. This appeal stems from a judgment in the trial court granting a summary judgment motion filed by appellee, United Savings, n.k.a. TransOhio Savings, Inc. (hereafter "United"). Appellants here, plaintiffs below, contend that the trial judge erred:

"1. * * * in considering appellee's motion for summary judgment, in that there is no evidence in the record of leave

being granted by the trial court to appellee and appellee's motion for summary judgment was filed after the pretrial hearing was conducted and the trial date set for a day certain.

"2. * * * in granting appellee's motion for summary judgment, in that there were, as a matter of law, genuine issues as to material facts sufficient to support appellant's claim against appellee."

We affirm.

On October 28, 1980, plaintiffs, Vernon and Mary Indermill, filed a twelve-page, fifty-paragraph complaint against eight separate defendants, one of whom is appellee before us now. In December 1980, United filed its answer in the cause below and simultaneously filed its first set of interrogatories. Plaintiffs promptly answered the inquiries made and defendant moved for summary judgment. Both parties submitted comprehensive and well-reasoned briefs along with pertinent attachments. The trial judge granted the motion and this appeal followed. We emphasize the obvious: that the instant appeal is one filed under the "protection" language of Civ. R. 54 and deals only with the lower court's determination of right concerning the individual defendant United. The cause against other defendants still remaining as parties is not affected by the ruling made below.

## I

Plaintiffs first contend that proper application of the relevant Civil Rules would have precluded United from filing its motion for summary judgment. Civ. R. 56 (B) pertains to actions contemplated by the defending party and states:

"A party against whom a claim, * * * is asserted * * * may at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof. If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court."

Plaintiffs are correct in stating that the record divulges nothing in the manner of a leave of court having been granted. The same record, of course, is barren of any notation that a pretrial had been conducted or that the case was scheduled for trial. It is obvious, however, that the summary judgment motion was filed, that both parties, by briefs, advised the court fully concerning their views on the subject of the motion, and that the court ruled on the question presented. Defendant contends that it had verbal leave to file. In any event, we are of the opinion that the consideration of the motion was within the discretion of the judge and that that discretion was not abused here. We reject Assignment of Error No. 1.

## II

As in all similar instances, our determination concerning the second claim of error is predicated upon the facts presented in the record before us on review. The basic thrust of plaintiffs' claims against this defendant is revealed by the complaint. In brief, plaintiffs allege that this defendant was a "prescribed" lender of monies to those purchasing condominium units from a co-defendant in this cause. United, in addition to being a proposed lender to individual unit buyers, was also a financing party to the builder of the entire complex. Plaintiffs, by virtue of disclosed information, were aware of the latter fact. Because of these circumstances, it is alleged that United had a unique view of the construction of the complex and the purchase of individual portions thereof. It is alleged in plaintiffs' affidavit that an agent of defendant, Mr. Dunn, told plaintiffs, at the time they closed the purchase transaction, that other units had been sold, but that plaintiffs' was the first one closed. In point of fact, no other units were ever successfully sold and the complex is now under some situation of foreclosure.

Plaintiffs urge us to rule that, under these circumstances (its relationship to the builder, to other buyers and to plain-

tiffs), defendant United occupied a fiduciary relationship with plaintiffs. Further, plaintiffs argue that defendant breached that special relationship in "misrepresenting" the fact of other purchases so as to procure plaintiffs' loan.

Other circumstances are uncontradicted. The project at the time plaintiffs' transaction closed was approximately sixty-five percent completed. It is also true that the discussion with Dunn took place when plaintiffs were closing their transaction. No statement is made that either purchase or closing was accomplished in reliance on defendant's agent's words.

Our first question then is whether reasonable minds could disagree that such circumstances lead to the conclusion that a fiduciary relationship existed between the parties at the time the offensive statements were made by Dunn. We believe not.

First, we do not view the status of defendant as a "prescribed" lender (the term used by plaintiffs) to be in and of itself a unique one. The seller's disclosure information suggested only that prospective buyers could borrow from any lending institution but that if loan monies were acquired from defendant, borrowers would be eligible for a preferential interest rate. United's position in this regard was no different from any other potential money lender.

"It is difficult * * *," say the annotators of Corpus Juris Secundum (36A Corpus Juris Secundum 382, 383, Fiduciary), "to define the term 'fiduciary relation' * * * but it may be defined generally as a relation in which, if a wrong arises, the same remedy exists against the wrongdoer on behalf of the principal as would exist against a trustee on behalf of the cestui que trust.

"* * *

"The term connotes a relation of trust as the basis of obligation of one and of security for the other, and involves the idea of trust and confidence, and embraces both technical fiduciary relations and those informal relations which exist whenever one man trusts in, and relies on, another. * * *"

The determination concerning what constitutes a confidential (fiduciary) relationship is a question of fact dependent upon the circumstances in each case:

"A confidential relationship is one in which one person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic or merely personal." *Taylor* v. *Shields* (1951), 64 Ohio Law Abs. 193, paragraph two of the headnotes.

See, also, *Berkmeyer* v. *Kellerman* (1877), 32 Ohio St. 239 and, generally, 23 Ohio Jurisprudence 2d, Fiduciaries, Divisions I & II. We also note specifically two opinions of more recent vintage: *Umbaugh Pole Bldg. Co.* v. *Scott* (1979), 58 Ohio St. 2d 282 [12 O.O.3d 279]; and *Stone* v. *Davis* (1981), 66 Ohio St. 2d 74 [20 O.O.3d 64].

It would appear to us that the circumstances defined in both *Umbaugh* and *Stone, supra,* are easily distinguishable and are fully supportive of the decision reached in each. We do not view them, in any event, to be in conflict. Indeed in *Stone,* Justice Corrigan stated:

"In *Umbaugh* * * * we recognized that, in most instances, the relationship of a creditor to his debtor, governed by the principles of freedom of contract, was not a fiduciary relationship. There, we held that evidence which revealed that the creditor had given advice to the debtor concerning the operation of the debtor's business was insufficient to transform what was otherwise a business relationship into a fiduciary relationship. * * *" 66 Ohio St. 2d at 78.

*Stone, supra,* obviously involves, if not a direct, an indirect reliance by Davis upon defendant bank for the service he requested.

The trial judge in the cause before us now did not inform us concerning specific findings of fact or law upon which his judgment was based. We are of the opinion, however, that the circumstances presented as being reflective of the dealings between plaintiffs and defendant are not, in law, sufficient to warrant a finding that a fiduciary relationship existed between them. Dunn did not advise plaintiffs that any other sales had been *completed* or, indeed, that defendant institution had approved loans for any of those transactions. In addition, the complex itself at the time was but sixty-five percent completed. The conversation complained of took place after the plaintiffs' plans to purchase were completed and at the time their transaction was closing. The fact that the seller suggested United as a source of loan monies has no legal significance which would warrant our finding to the contrary. The cross-complaint in a second case is part of the record only by virtue of plaintiffs' argument.

Having held that reasonable minds could reach but one conclusion concerning the question of the parties' relationship and that conclusion to be adverse to plaintiffs, it follows that the actions of United cannot constitute a breach of the duty owed by a fiduciary to one relying upon him.

In a specific contention associated with the general theme of plaintiffs, plaintiffs state that Dunn assumed the task of securing for them a guaranteed title from Chicago Title, a co-defendant below. We note from plaintiffs' complaint their words that Chicago Title issued a *title guarantee* to plaintiffs in August 1979. Defendant Chicago Title answered, contending in part that plaintiffs' complaint was deficient in that it failed to attach a copy of the title guarantee alleged to have been issued. Even though Dunn is assumed to have said he would assist in obtaining the report, it would appear that plaintiffs say in their complaint that one

was issued. Whether Chicago Title denies this is unclear from the pleadings. In any event, we cannot say that the facts warrant our finding that this allegation suggests the establishment or breach of a fiduciary relationship.

The contents of the record referred to require us to reject plaintiffs' claims of error and affirm the judgment complained of. The cause is remanded to the trial court for further action concerning the remaining defendants according to law.

*Judgment affirmed.*

VICTOR, P.J., and BARBER, J., concur.

BARBER, J., of the Sixth Appellate District, sitting by assignment in the Ninth Appellate District.