**Duren**
**v.**
**Americare Columbus**
**Nursing Center**
*[Cite as 4 AOA 448]*

*Case No. 89AP-688*
*Franklin County, (10th)*
*Decided June 28, 1990*

*Mr. Donald Lynn Billman, for Appellants.*

*Earl, Warburton, Adams & Davis, Mr. Dick M. Warburton, Jr. and Mr. Dana Preisse, for Appellee, Americare Columbus Nursing Center.*

*Lane, Alton & Horst, Mr. Theodore M. Munsell and Ms. Karen K. Rosenberg, for Appellee, Phillip J. Stern, M.D.*

*John C. Nemeth & Associates, Mr. John C. Nemeth and Mr. Mark R. Blackmer, for Appellee, John H. Lewis. Esq.*

REILLY, P.J.

This is an appeal from a judgment of the Franklin County Court of Common Pleas granting summary for defendants.

Plaintiffs advance the following assignments of error:

"1. The trial court erred in granting defendant's motions for summary judgment upon the claim of malpractice as plaintiffs' complaint sets forth the additional claim of wrongful death therefore a genuine issue of material fact remains.

"2. The trial court erred in granting defendant Americare Columbus Nursing Center summary judgment as such judgment is contrary to law.

"A. It was error to entertain defendant Americare's motion for summary judgment filed in violation of Civil Rule 56(A), that is it was filed after the matter had been set for trial.

"B. It was error to grant defendant Americare's 'Motion for Leave to File Motion for Summary Judgment Instanter' as Civil Rule 56 controls the manner in which such motions are filed and there is no provision for such a motion therein nor does any other rule provide for such 'instanter' motions.

"C. It was error to entertain defendant Americare's motion for summary judgment, simultaneous to a granting of its motion to file instanter, without due process notice to plaintiffs so as to afford plaintiffs an opportunity to reply to that motion.

"3. The trial court erred in granting defendant Stern, M.D., summary judgment as such judgment is contrary to law.

"A. It was error to entertain defendant Stern's motion for summary judgment filed in violation of Civil Rule 56(A), that is it was filed after the matter had been set for trial.

"B. It was error for the court to deny plaintiffs' motion to strike defendant Stern's motion for summary judgment as the said filing by Stern was in direct contravention to Civil Rule 56.

"C. It was error for the court to excuse defendant Stern's filing contrary to the provisions of Rule 56(A) upon the claim of that [sic] defendant's present counsel that '... defendant Stern (sic) was unaware ...' and that '... said defendant (sic) had not received notice of the trial date ...' when the court's own docket reflects service of notice of trial on the said defendant's original counsel. Further, 'Notice' of trial scheduling as a bar to filing for summary judgment is not an element of the proscription against filing in Rule 56.

"D. It was error for the court that '... plaintiffs cannot claim hardship when as early as November 9, 1987, Judge Williams (former judge on case) in overruling motion upon reconsideration his former judgment on the pleadings granted to defendant Stern ...' as the earlier ruling referred to had nothing to do with Stern and only concerned defendant Lewis.

"E. It was error for the court to excuse defendant Stern from the requirement of Rule 56(A) upon holding that '... had defendant Stern filed a motion for leave of court, the court would have granted said motion ...' and such an expression reflects a prejudicial pre-disposition to aid this defendant violative of the court's duty to be fair and impartial.

"F. It was error to entertain defendant Stern's motion for summary judgment, simultaneous to overruling plaintiffs' motion to strike, without due process notice to plaintiffs of intention to consider that motion so as to afford plaintiffs an opportunity to reply to that motion.

"4. The trial court erred in granting defendant Lewis, Esq., summary judgment as such judgment is contrary to law.

"A. It was error for the court to refuse to consider plaintiffs' September 29, 1988 response to defendant Lewis' motion upon the holding that it was '... filed out of rule ...' beyond the '... cut-off date for filing a response ...' in said defendant's motion when the court by entry of September 26, 1988 extended the 'cut-off' date to September 30, 1988.

"B. It was error for the court to hold that the plaintiff Administrator of decedent Florence Knapp cannot maintain a malpractice action against the decedent's attorney Lewis.

"C. The affidavit submitted by defendant Lewis was not dispositive of the issues as established by plaintiffs' reply affidavit. The issues here are well within the knowledge and comprehension

of laypersons and need not be established by expert testimony."

Plaintiffs filed a complaint against defendants on April 20, 1987 in the Franklin County Court of Common Pleas. Plaintiffs alleged seven claim for relief. The action arises from the following events.

The decedent, Florence Knapp, was admitted as a patient of defendant Americare Columbus Nursing Center ("Americare") on February 21, 1986. On March 8, 1986, with the approval of defendant Dr. Phillip J. Stern ("Dr. Stern"), decedent was discharged into the care of defendant Patsy Kelley ("Ms. Kelley"). To accomplish this discharge, Ms. Kelley had obtained a written power-of-attorney from decedent's attorney. Apparently, she represented herself to be decedent's great niece. In fact, Ms. Kelley recently had been released from the Franklin County jail following a theft conviction. Plaintiffs allege that Ms. Kelley is a career criminal who has been convicted of not less than ten felonies.

Just prior to decedent's discharge in March 1986, Ms. Kelley procured several legal documents with the aid of decedent's attorney, defendant John H. Lewis ("Lewis"). Decedent executed the above-mentioned power-of-attorney on March 6, 1986 appointing Ms. Kelley as attorney-in-fact for decedent. This document states that Ms. Kelley:

"Is authorized to change locks on my residence property at 5039 Jackson Pike; and exclude all persons from the premises except myself or whom she approves;

"[T]o withdraw funds from any checking or savings accounts for use for my benefit or cleaning and repair of my 5039 Jackson Pike residence;

"[T]o endorse my name on any pension or other income payments to me and expend such funds for my benefit as described above."

The document also contains some handwriting, which reads:

"I, Patsy Mae Kelly, am taking Florence M. Knapp for the rest of her life and promise to keep her with me until her death. Promise never to put her away again."

Under this handwriting is a signature which reads: "Patsy Mae Kelly." Further, the document has a handwritten notation, stating: "Florence Knapp is of sound mind." Following the notation is a signature reading: "Phillip Stern, M.D." The document indicates that it was prepared by attorney Lewis.

Decedent executed a will on March 7, 1986, which was witnessed by two persons who were apparently employees of Americare. The will, in pertinent part, reads:

"*ITEM II:* All the property, real, personal and mixed, of every kind and description, wheresoever situate, which I may own or have the right to dispose of at the time of my decease, I give, devise and bequeath to my Niece, PATSY MAE KELLY, absolutely, and in fee simple."

After leaving Americare with Ms. Kelley, decedent resided with her at decedent's home. Five weeks after the discharge, Jackson Township medics found decedent dead in her home. Plaintiffs contend that the Franklin County Coroner determined the cause of death to be cardiopulmonary arrest as a consequence of bronchopneumonia and severe chronic obstructive pulmonary disease. Plaintiffs maintain that Ms. Kelley killed decedent by bringing about the pneumonia and by taking decedent off her oxygen.

Following decedent's death, attorney Lewis applied to the Franklin County Probate Court to have Ms. Kelley declared executor of decedent's estate. Decedent's will named Ms. Kelley as executor. After objection by decedent's children, the probate court appointed plaintiff David Duren, decedent's son, as successor administrator, WWA.

Plaintiffs then filed this action against defendants.[1] Plaintiffs' amended complaint alleges seven claims for relief. The first claim, entitled "Survivorship Action/Nursing Center Malpractice," seeks damages against Americare. The second, entitled "Survivorship Action/Medical Malpractice," seeks damages against Dr. Stern. The third, entitled "Survivorship Action/Legal Malpractice," seeks damages against defendant Lewis. The fourth, entitled "Survivorship Action/Fiduciary Kelley," seeks damages against Patsy Melvin. The fifth, entitled "Wrongful Death," seeks damages against all of the defendants. The sixth entitled "Legal Malpractice/Children's Claim," also seeks damages against attorney Lewis. The seventh, entitled "Declaratory Judgment/Wrongdoer," seeks a declaratory judgment pursuant to R.C. Chapter 2721 and Civ. R. 57. Defendants moved for summary judgment, which the trial court granted.

In this appeal, plaintiffs argue that the court used improper procedures in ruling on the summary judgment motions. Specifically, plaintiffs' second and third assignments of error dispute the procedure used by the trial court in granting summary judgment to defendants Americare and Dr. Stern.

On January 25, 1989, the trial court scheduled the present cause for trial to be held on June

7, 1989. The file indicates that notice of this was sent to all attorneys of record.

Then, on March 9, 1989, Americare filed a motion for leave to file for summary judgment instanter.[2] Shortly thereafter, on March 13, 1989, Americare filed its motion for summary judgment. Plaintiffs responded on April 5, 1989 by filing a memorandum in opposition to Americare's motion for leave. The court had scheduled the motion for non-oral hearing on April 6, 1989.

Dr. Stern filed a motion for summary judgment on March 13, 1989. He did not attempt to obtain leave to file the motion. Plaintiffs responded to Dr. Stern's motion by filing a motion to strike on May 15, 1989. They objected to Dr. Stern's filing without leave and further requested notice and reasonable time to respond if the court elected to consider the merits of the summary judgment motion. The court set the non-oral hearing on this summary judgment motion for April 1, 1989, as reflected by the time-stamped, signed entry in the file. Although the parties have disputed this date in supplemental memoranda filed with this court, the original entry in the file controls herein.

The trial court ruled on the above-mentioned motions in its decision of June 5, 1989. As to Americare, the court granted leave to file the motion for summary judgment and then simultaneously ruled on the merits of the summary judgment. Since plaintiffs filed no opposing evidence, the court granted Americare's motion. As to Dr. Stern, the court wrote:

"* * * Plaintiff has filed a Motion to Strike Defendant Sterns's Motion for Summary Judgment as having been filed on March 10, 1989, without leave of court, and citing that on January 25, 1989, plaintiff received notice that the case had been set for a June 7, 1989, trial date. Defendant Stern opposes the Motion to strike by providing the Court with evidence that said defendant had not received notice of the trial date until April 6, 1989, and two other notices on April 10, 1989. Therefore, defendant Stern was unaware that the case had been set for trial until approximately one month after filing of his Motion for Summary Judgment. Had defendant Stern filed a Motion for Leave of Court, the Court would have granted said Motion. Furthermore, plaintiffs cannot claim hardship when as early as November 9, 1987, Judge Williams in overruling upon reconsideration his former judgment on the pleadings granted to defendant Stern, advised the parties that the issue would be best considered by a Motion for Summary Judgment after allowance for discovery. Where-

fore, plaintiffs' Motion to Strike Defendant Stern's Motion for Summary Judgment is hereby DENIED."

The court then considered the summary judgment motion. The court found that plaintiffs did not oppose the motion. Hence, the court granted summary judgment for Dr. Stern.

Plaintiffs contend that, based upon the procedure used, the trial court's consideration of defendants' summary judgment motions violated Civ. R. 56(B). The rule provides in pertinent part:

"(B) For defending party. A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may at any time, move with or without supporting affidavits for a summary judgment in his favor as to all or any part thereof. *If the action has been set for pretrial or trial, a motion for summary judgment may be made only with leave of court.*" (Emphasis added.)

Civ. R. 56(C) further provides that the motion "shall be served at least fourteen days before the time fixed for hearing. The adverse party prior to the day of hearing may serve and file opposing affidavits."

As to leave of court, the Staff Notes to amended Civ. R. 56(B) include the following statement:

"Prior to this amendment, when an action had been set for trial, a motion for summary judgment required the consent of all of the parties to the action. The purpose of the provision was to prevent delays in the trial of actions occasioned by the late filing of motions for summary judgment.

"M.C. Sup. R. 16(B), applicable to all trial courts [See M.C. Sup. R. 1(A)], provides that priority is to be given to the case first assigned for trial in the event of a conflict in a counsel's trial assignments. That rule has resulted in the early assignment of cases for trial and an enlargement of the period of time within which consent of the parties is required for filing a motion for summary judgment.

"The purpose of the amendment is to remove the consent limitation and leave the entertainment of a motion for summary judgment to the discretion of the court once the action has been set for pretrial or for trial. Under the rules of superintendence, the judge to whom an action is assigned is responsible for its expeditious determination."

Hence, the leave of court amendment removes the right to withhold consent and vests the right to file within the realm of the court's discretion. However, the rule does not state that a motion can

be filed at any time or that a court can disregard valid objections to motions filed without leave.

Plaintiffs' second assignment of error involves the court's ruling on Americare's motion for summary judgment. Plaintiffs allege that the simultaneous granting of leave and consideration of the motion was prejudicial error. Plaintiffs contend that they had no duty to respond to the out-of-rule motion until the court granted leave. Because the court granted leave and concurrently considered the motion for summary judgment, plaintiffs maintain that they were denied an opportunity to respond to the motion.

Defendants, however, contend that, in any event, leave is discretionary. Americare cites *Indermill* v. *United Savings* (1982), 5 Ohio App. 3d 243, which states in paragraph one of the syllabus:

"A court may, in the exercise of its sound discretion, consider a motion for summary judgment which has been filed, without express leave of court, after the action has been set for pretrial or trial."

Nonetheless, the facts of *Indermill* show that the *Indermill* court did not to intend to remove the leave provision from Civ. R. 56(B). In *Indermill,* the court found the following facts:

"* * * [T]he record divulges nothing in the manner of a leave of court having been granted. The same record, of course, is barren of any notation that a pretrial had been conducted or that the case was scheduled for trial. It is obvious, however, that the summary judgment motion was filed, that both parties, by briefs, advised the court fully concerning their views on the subject of the motion, and that the court ruled on the question presented. Defendant contends that it had verbal leave to file. In any event, we are of the opinion that the consideration of the motion was within the discretion of the judge and that that discretion was not abused here. * * *" *Id.* at 244.

Thus, in *Indermill,* the complaining party had never opposed the filing of the summary judgment motion until after fully proceeding to argue the motion and learning of the court's adverse decision.

Similarly, in *City Loan & Savings Co.* v. *Howard* (1984), 16 Ohio App. 3d 185, the court found no abuse of discretion. In that case, the moving party had filed an out-of-rule motion for summary judgment. The non-moving party then filed a memorandum in opposition stating that no leave had been granted. However, the nonmoving party appeared at a hearing before a referee on the summary judgment motion and thus waived the

issue. The trial court's *post hoc* journalization of leave stated that "within its own knowledge" leave had been given to the moving party. But, in any event, the nonmoving parties' appearance constituted waiver.

In this case, as distinguished from *Indermill, supra,* plaintiffs have not otherwise proceeded with arguing the summary judgment on the merits. Nor have they failed to raise the leave issue. See *Richardson* v. *Columbus Metropolitan Area Community Action Organization* (Dec. 30, 1982), Franklin App. No. 82AP-527, unreported (1982 Opinions 4015); *Oster* v. *Motorists Mut. Ins. Co.* (May 4, 1989), Cuyahoga App. No. 56420, unreported. Instead, plaintiffs were denied an opportunity to submit evidentiary materials by the court's conversion of an otherwise out-of-rule motion into a proper one, coupled with simultaneous consideration of the summary judgment motion. In effect, the court retroactively imposed a duty on plaintiffs to oppose an out-of-rule motion. Plaintiffs had no notice of such a duty. *Cf. Petrey* v. *Simon* (1983), 4 Ohio St. 3d 154 (it is error for a court to fail to notify all parties when it converts a motion to dismiss for failure to state a claim into a motion for summary judgment). After granting leave, the trial court was required to provide plaintiffs with an opportunity to respond.

Plaintiffs do not contend that it was an abuse of discretion to grant leave. See *Paramount Supply Co.* v. *Sherlin Corp.* (1984), 16 Ohio App. 3d 176. They contest the timing and manner of the grant of leave. They are correct in their position.

Plaintiff's second assignment of error is well-taken.

Plaintiff's third assignment of error raises similar issues concerning Dr. Stern's motion for summary judgment. As to this motion, the trial court simultaneously overruled plaintiffs' motion to strike and then granted the summary judgment motion. The court found:

"that counsel for Dr. Stern had no notice of trial date until April 6, 1989; that if Dr. Stern had filed for leave, the court would have granted it; and that the initial judge on this case had advised the parties that the issue would be best resolved by summary judgment. Thus, plaintiffs were not prejudiced because they were aware they had to prepare."

The trial court erred in concluding that Dr. Stern's attorneys had no notice that the action was scheduled for trial when they filed the motion for summary judgment. This motion was filed by attorneys who apparently were associated with Dr. Stern's original counsel. But, they did not appear

of record until April 6, 1989, when they filed a notice of substitution of counsel. The attorney of record for Dr. Stern had answered the complaint and otherwise defended him. Thus, he was sent a notice that this action was set for trial.

Regarding the leave issue, in *State* v. *Licsak* (1974), 41 Ohio App. 2d 165, this court held that it was prejudicial error for a trial court to overrule defendant's motion to strike and grant summary judgment when the motion was made after the case had been set for pre-trial and when the court had never granted leave to file. In *Licsak*, the defendant attempted to oppose the motion for summary judgment, but the trial court refused to consider the defendant's evidence because it was out of rule. Specifically, the trial court found that the defendant's evidence was not filed at least fourteen days prior to the hearing date. This court construed Civ. R, 56(A) in *Licsak, supra,* as follows:

"* * * That rule provides that when a party is seeking affirmative relief, and a pretrial hearing has been set, a motion for summary judgment may be made only with leave of court. Thus, the only way the plaintiff could properly file the motion for summary judgment would have been with leave of court. There is no entry granting such leave. Thus, there was error in overruling the motion to strike the motion for summary judgment. * * *" *Id.* at 169.

This court further held that defendants' memorandum in opposition was not out of rule because defendants could have filed opposing evidence up until "prior to the day of hearing." *Id.* at 170 [applying Civ. R. 56(C)]. Following *Licsak*, this court, in *Carlin* v. *Brownfield* (June 18, 1985), Franklin App. No. 84AP-345, unreported (1985 Opinions 1703), found that it was error for a trial court to grant summary judgment for a defendant where there was no prior leave granted and where the motion was heard on the same day it was filed.

Plaintiffs' third assignment of error is well-taken.

Plaintiffs' fourth assignment of error involves the granting of summary judgment for Lewis. First, plaintiffs contend that it was error for the trial court to find their evidence opposing summary judgment out of rule. Second, plaintiffs contend that the trial court erred in concluding that there was no genuine issue of material fact as to attorney Lewis.

Lewis filed a motion for summary judgment on February 10, 1988 with supporting affidavits. This motion was filed prior to the time the cause was scheduled for trial. Hence, leave was unnecessary. After several postponements, the trial court eventually set September 30, 1988 as the time for non-oral hearing. Plaintiffs filed a memorandum in opposition to defendants' motion for summary judgment on September 29, 1988. The memorandum was supported by the affidavit of Jackie Lee Knapp and a copy of an application to probate a will. As to plaintiffs' opposing evidence, the court wrote:

"The Court will note that the Notice of Non-Oral Hearing with respect to defendant Lewis' Motion for Summary Judgment sets March 2, 1988, as the cut-off date for filing a response. Plaintiffs' response was not filed until September 29, 1988, more than six (6) months out of rule. The Court will not consider factual matters filed out of rule. However, this Court's opinion with respect to the merits of the summary judgment issue would not be altered by the affidavit and argument submitted by plaintiffs even if this Court would consider that document for purposes of this Motion."

The prior judge in this case scheduled the non-oral hearing date for Lewis' motion as September 30, 1988, Civ. R. 56(C) states that the "* * * adverse party prior to the day of hearing may serve and file opposing affidavits. * * *" Here, plaintiffs did this on September 29, 1988, one day prior to the time set for non-oral hearing.

Defendant contends that Loc. R. 25.01 of the Rules of Practice of the Franklin County Common Pleas Court provides that responses to motions shall be served on or before the fourteenth day after the date of service of the motion. Loc. R. 25.03(B), which specifically involves summary judgment motions, states:

"All affidavits, depositions, and other evidentiary materials permitted by Civil Rule 56(C) in support of or in opposition to the motion for summary judgment shall be filed prior to the day set for the non-oral hearing on the motion. This section does not extend the time limits for filing answer briefs and reply briefs as provided in Rule 25.01."

Thus, it appears that plaintiffs failed to file their brief within the rules. At any rate, the trial court stated that the submitted materials would not have changed the result. The court considered the merits of the motion.

The trial court found plaintiffs' claims defective in several respects. First, the court found that no attorney-client relationship existed between Lewis and plaintiffs. Second, the court found that plaintiffs lacked privity with attorney Lewis on the authority of *Scholler* v. *Scholler* (1984), 10 Ohio St. 3d 98 and *Simon* v. *Zipperstein* (1987), 32

Ohio St. 3d 74. Third, the court found no evidence of collusion or fraud concerning Lewis. Finally, the court found that plaintiffs failed to present any evidence of negligence by Lewis. Hence, the court concluded "* * * as a matter of law, the cause of action is not stated with respect to wrongful death. * * *" The court found that plaintiffs were essentially contesting decedent's will and that the proper forum for such an action is the probate court.[3]

Plaintiffs claim that their opposing evidence, when construed most strongly in their favor, establishes a genuine issue of material fact as to legal malpractice. In support of his motion for summary judgment, Lewis attached two affidavits, the executed power-of-attorney and the will. In his first affidavit, Lewis states facts which would establish that he can render an opinion on the standard of care or negligence. He then states that he was not negligent as to decedent. Further, he denies any attorney-client relationship with plaintiffs. He also explains that, at the time he prepared the power-of-attorney and will documents, he had a broken leg and was unable to drive. So, he did not visit decedent in the nursing home or have any contact with plaintiffs. Moreover, Lewis unequivocally denies that he acted with malice towards decedent or in collusion with Patsy Melvin.

In Lewis' second affidavit, by his secretary, Dorothy E. Caldwell, states that, at the time in question, she communicated with decedent over the telephone. Caldwell also states that she prepared the documents pursuant to Lewis' instructions. Further, a journal entry from the probate court is attached to this affidavit. The entry states facts which establish that the will was properly executed and admitted to probate.

In response to defendants' motion, plaintiffs submitted the affidavit of Jackie Lee Knapp and a copy of an application to probate decedent's will. Mr. Knapp, decedent's son, is one of the plaintiffs. He states that Lewis' affidavit reveals a fundamental misunderstanding regarding the identity of Patsy Melvin. The will refers to Patsy (Kelley) Melvin as the daughter of decedent's sister, who decedent helped raise. Mr. Knapp states that the person decedent helped raised is actually named "Patsy Kelly." However, Patsy Mae Kelley (referred to herein as Patsy Melvin) is not this person. Instead, she is decedent's great niece by marriage. Thus, plaintiffs argue that Lewis was confused as to Patsy Melvin's identity. Plaintiffs claims such confusion constitutes negligence.

As evidence of fraud or collusion, plaintiffs attach the copy of the application to probate the will. That application shows that Lewis was acting as attorney for applicant Patsy Melvin, who was named in the will as executor.

The elements of legal malpractice require the plaintiffs to prove:

"1. There was an attorney-client relationship.

"2. There were sufficient facts to show that the attorney's alleged misconduct caused the plaintiff's injury.

"3. The attorney had breached his duty to provide competent legal services.

"4. The damages which the plaintiff sustained were the proximate result of the attorney's alleged misconduct." *McIntire* v. *Paul Scott Co., L.P.A.* (Mar. 27, 1986), Franklin App. No. 85AP-762, unreported (1986 Opinions 675, 677).

In any event, an attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of and with the knowledge of his client, unless such third person is in privity with the client or the attorney acts negligently. *Scholler, supra,* paragraph one of the syllabus. A beneficiary whose interest in an estate is vested is in privity with the fiduciary of the estate, and where such privity exists, the attorney for the fiduciary is not immune from liability to the vested beneficiary for damages arising from the attorney's negligent performance. *Elam* v. *Hyatt Legal Serv.* (1989), 44 Ohio St. 3d 175, syllabus. However, a beneficiary whose interest is only potential has no cause of action against an attorney for the negligent preparation of a will. *Simon, supra.*

In this case, all parties agree that decedent was the client of Lewis. But, the parties disagree on the application of the privity limitations of *Elam, Simon* and *Scholler, supra.* Plaintiffs claims that their action is based on the survival statute and therefore, the privity limitations do not apply. Plaintiffs argue that the privity limitations only bar actions by third persons for injuries to their interests. Plaintiffs maintain that the survival cause of action is based on injuries suffered by the client until her death. Plaintiffs argue that, although a survival action is brought after decedent's death by the administrator of the decedent's estate, a "third person," this does not mean that the privity limitations apply.

The Supreme Court wrote in the syllabus of *Loveman* v. *Hamilton* (1981), 66 Ohio St. 2d 183:

"An action for legal malpractice survives the death of the charged attorney for the reasons that legal malpractice (1) is a cause of action that sur-

vives at common law and (2) constitutes an injury to the client's property interests. (R.C. 2305.21 construed and applied.)"

Notwithstanding that a malpractice action survives at common law, plaintiffs have alleged various types of damages which fall within the sphere of the privity limitations. For instance, in their fifth claim for relief, entitled "Wrongful Death," plaintiffs allege that decedent's "* * * surviving children, next of kin and heirs at law have suffered pecuniary loss * * * including * * * loss of prospective inheritance * * *." In plaintiffs' sixth claim for relief, entitled "Legal Malpractice/Children's Claim," the complaint states:

"52. Defendant Lewis breached his obligation to the next of kin and heirs at law, the usual and natural beneficiaries of the estate of a parent for their children as contemplated in law and custom, to exercise a high degree of certainty that the act of making will disinheriting those persons was free from under [sic] influence, coercion, immoral conduct, fraud, deception or other illegal forces.

"53. As a direct and proximate result of Defendant Lewis' negligence as set forth above Plaintiff Children have been denied inheritance to which they are entitled and have suffered the loss of personality such as family heirlooms and mementos of their Parents and from their own Childhood. Further they have been required to expend moneys for legal fees and expenses to right the injury which would not have occurred but the Defendant Lewis, Esq.'s negligence."

Manifestly, plaintiffs have no vested interest in their inheritance. *Simon, supra.* They are merely potential beneficiaries who could possibly inherit. If decedent wanted to disinherit them, as she apparently did, then she was free to do so. Moreover, the fact that the children may have inherited under intestacy laws does not change the situation. Such expectancies are not vested interests. Thus, as to these claims for damages, the privity limitations bar recovery against attorney Lewis.

As to the survival claim against Lewis, the trial court was correct in granting summary judgment given that there was no evidence of a breach of the standard of care.

"* * * [E]xpert testimony is ordinarily required to establish that the attorney has breached the accepted standard of legal representation. * * *" *McIntire, supra,* at 678 [citing *Murphey, Young & Smith Co., L.P.A.* v. *Billman* (Nov. 20, 1984), Franklin App. No. 84AP-49, unreported (1984 Opinions 2803, 2917)]. However, "* * *

where the breach [of duty of care] * * * is so obvious that it may be determined by the court as a matter of law, or is within the ordinary knowledge and experience of laymen[,]" expert evidence is unnecessary. *Bloom* v. *Dieckmann* (1983), 11 Ohio App. 3d 202, syllabus. See *McInnis* v. *Hyatt Legal Clinics* (1984), 10 Ohio St. 3d 112.

In this case, defendant Lewis' affidavit presented expert opinion that Lewis did not breach his duty of care. Plaintiffs' affidavit of Mr. Knapp alleges that Lewis may have misunderstood who Patsy Melvin was. Plaintiffs' theory is that Lewis had an obligation to investigate her identity. Plaintiffs contend that an extraordinary document, such as a power-of-attorney, requires an investigation or a background check of Patsy Melvin. This, plaintiffs contend, would have prevented the injury to decedent. Plaintiffs, however, have cited no statute or case which stands for the proposition that Lewis had such an obligation. Further, plaintiffs have not provided any expert witnesses to testify as to the standard of care regarding the documents in question and the investigation that is customarily performed.

This court does not find any evidence establishing that Lewis was negligent. Indeed, as *McInnis, supra,* holds, disregarding client instructions can involve liability. It would be inconsistent for this court to hold that Lewis had a duty to disregard his client's wishes. At any rate, this is not a question within the knowledge and experience of laypersons.

Furthermore, Lewis' representation of Patsy Melvin in an effort to probate decedent's will does not establish collusion, bad faith, malice or fraud. Patsy Melvin was named as executor in the will. As Dorothy Caldwell states, decedent was a long-time client of Lewis. He had performed many services for decedent. When decedent's husband died and she was executor, Lewis served as her attorney. There was nothing unusual about Lewis attempting to probate the will in this case. Simply stated, there was no evidence of collusion, bad faith, malice or fraud.

Plaintiffs' fourth assignment of error is not well-taken.

Plaintiffs' first assignment of error is directed to the wrongful death claim against all the defendants. Plaintiffs assert that, while the court ruled on the malpractice aspects of this action, the court failed to address the wrongful death claim. This, plaintiffs contend, leaves a genuine issue of material fact for resolution.

Essentially, plaintiffs maintain that the combined activities of all the defendants enabled Patsy

Melvin to injure decedent. Plaintiffs maintain this establishes liability under the Ohio Wrongful Death Statute, R.C. Chapter 2125.

R.C. 2125.01 provides the basis for an action under the wrongful death statute. The statute allows for damages "[w]hen the death of a person is caused by wrongful act, neglect, or default * * *[.]" It is incumbent on plaintiffs to prove that defendants violated some legal duty owed to decedent. See *Littleton* v. *Good Samaritan Hospital & Health Ctr.* (1988), 39 Ohio St. 3d 86, 92. Hence, plaintiffs must at least show fault on the part of the defendants.

We have previously discussed plaintiffs' efforts to show fault on the part of Lewis individually. Here, plaintiffs claim that Lewis and the other defendants are liable as "aiders and abettors" of the alleged wrongful acts of Patsy Melvin.

The Restatement of Law 2d, Torts (1977) 315, Section 876, provides:

"For harm resulting to third person from the tortious conduct of another, one is subject to liability if he

"(a) does a tortious act in concert with the other or pursuant to a common design with him, or

"(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement of the other so to conduct himself, or

"(c) gives a substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person."

This section has been cited as authority in Ohio. See *Kuhn* v. *Bader* (1951), 89 Ohio App. 203 (citing the first Restatement of the Law of Torts, Section 876); *Great Central Ins. Co.* v. *Tobias* (Apr. 9, 1987), Franklin App. No. 86AP-820, unreported (1987 Opinions 548), reversed on other grounds in *Great Central Ins. Co.* v. *Tobias* (1988), 37 Ohio St. 3d 127.

There is nothing in the record which would support an application of Section 876 in this case. Under Subsection (a) it is necessary for Lewis to have acted in concert with Patsy Melvin, pursuant to a common design to harm decedent. At best, plaintiffs have asserted that attorney Lewis was negligent as he should have known that Patsy Melvin was up to something. With regard to attorney Lewis, we have stated above that plaintiffs' evidence, even construed most strongly in their favor, did not show any collusion or similar wrongful intent. Further, if plaintiffs' claim is the Subsection (b) applies, clearly that section requires that Lewis knew that Patsy Melvin was breaching a duty toward decedent. Plaintiffs merely claim that defendants should have known of the breach. Further, under Subsection (c), it is necessary that Lewis' conduct, separately considered, constituted a breach of duty to decedent. But, we have found above that there was not breach of duty, as plaintiffs have failed to present opposing evidence which would establish a genuine issue of material fact.

Therefore, as to Lewis, summary judgment was appropriate on the wrongful death claim. As to the other defendants, plaintiffs should have the opportunity to present opposing evidence to establish there was a breach of duty.

Plaintiffs' first assignment of error is well-taken to the extent that plaintiffs were deprived of the opportunity to present such evidence.

Plaintiff's first assignment of error is sustained in part and overruled in part; the second and third assignments of error are sustained, and the fourth assignment of error is overruled. The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed and cause remanded.*

BRYANT and PEPPLE, JJ., concur.

PEPPLE, J., of the Auglaize County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

---

[1] Defendant Ms. Kelley is not involved in this appeal, as the judgment of the trial court did not affect her. Plaintiffs uniformly spell her name "Kelley" while defendants spell it "Kelly." This spelling is material to plaintiffs' allegation that attorney Lewis misidentified Ms. Kelley. See *supra*. For purposes of this appeal, this court will hereinafter refer to her as Patsy Melvin. Apparently, she married after the events described above occurred.

[2] Since the action had been set for trial, summary judgment motions could only be filed with leave of court. See Civ. R. 56(B).

[3] Plaintiffs have not assigned as error the declaratory judgment aspect of this case.