JOURNAL ENTRY and OPINION
{¶ 1} Appellant Kensington Partners, L.P. (Kensington) appeals the trial court's summary judgment in favor of appellee Columbian Mutual Life Insurance Company (Columbian). Kensington assigns the following errors for our review:
 {¶ 2} "I. The trial court erred to the prejudice of plaintiff/counterclaim defendant-appellant Kensington Partners, L.P. in granting summary judgment in favor of defendant/counterclaim plaintiff-appellee Columbian Mutual Life Insurance Company."
 {¶ 3} "II. The trial court erred in failing to grant partial summary judgment in favor of appellant."
 {¶ 4} Having reviewed the record and pertinent law, we affirm the judgment of the court. The apposite facts follow.
 {¶ 5} Kensington is an Ohio limited partnership whose business includes, but is not limited to, real estate development. Columbian is a corporation with its principal place of business in New York. Columbian is in the business of, and among other things, extending loans to commercial borrowers.
 {¶ 6} On or about January 18, 1999, Kensington applied to Columbian for a loan in the amount of $1,300,000. The loan contemplated was to be secured by a first lien upon property known as Kensington Square Shopping Center, located in Westlake, Ohio. The agreement contained a two percent loan commitment fee. One half of the commitment fee was due upon execution of the application and the balance due five days after notification of loan approval. Kensington executed the loan application and issued a check to Columbian in the amount of $13,000, along with a $1,000 loan processing fee.
 {¶ 7} Thereafter, Columbian extended to Kensington a mortgage loan commitment for a loan in the amount of $1,300,000, which Kensington accepted. The loan commitment contained a New York choice of law provision. Pursuant to the agreement, Kensington issued a second check in the amount of $13,000 which represented the balance of the loan commitment fee. The loan was scheduled to close on or before May 12, 1999, but the closing did not occur.
 {¶ 8} On May 17, 1999, Columbian sent Kensington a letter informing Kensington that it was in breach of the loan commitment, and it was terminating its obligation under the loan. Columbian indicated it intended to retain the $26,000 commitment fee and the $1,000 loan processing fee as liquidated damages for services rendered in underwriting the loan application and issuance of a commitment.
 {¶ 9} Columbian further specified in the letter that it terminated the loan commitment because Kensington failed to do the following:
"(a) in connection with the submission of its application, Kensingtonfailed to disclose the lease default status of two tenants — ClubOlympia, Inc. and Eagle Cleaners — who occupied 33 percent of theleasable space in the building upon which the mortgage was sought.
 "(B) failure to provide tenant estoppel certificates from no less than90 percent of the tenants as required by Item 19(14) on page 8 of theloan commitment. 33% of the tenants are in default under their leaseterms and 7% of the building is vacant since the former Pella Window anddoor space has not been re-leased.
 "(C) Since Columbian Mutual was not informed of the tenant defaultsuntil April 1999, there are unresolved issues regarding the validity ofthe appraisal and cash flow for the subject property. The appraiser wasnot provided with information regarding the default status of two of thetenants; especially the long term default status of Club Olympia Inc.existing for at least two years. Also unresolved is whether bankruptcy,reorganization, arrangement, insolvency or liquidation proceedings havebeen instituted by or against Club Olympia, Inc. or Eagle Cleaners."[1]
 {¶ 10} Finally, Columbian demanded that Kensington pay to it the cost of $7,808. This cost constituted attorney fees incurred by Columbian's lawyers for preparation of the loan agreement.
 {¶ 11} On May 25, 1999, Kensington's lawyers responded by requesting Columbian extend the loan. Columbian refused.
 {¶ 12} On November 18, 1999, Kensington filed suit against Columbian seeking reimbursement of $27,000 in commitment and loan processing fees paid under the terms of the agreement. Columbian counterclaimed for costs and expenses pursuant to the loan commitment agreement. Thereafter, Columbian sought summary judgment on Kensington's claim and on its counterclaim to recover cost. Kensington filed an opposition to Columbian's motion. The trial court granted summary judgment in favor of Columbian on both counts and awarded to Columbian damages in the amount of $7,808. Kensington now appeals.
 {¶ 13} In its first assigned error, Kensington argues the trial court erred in granting summary judgment in favor of Columbian. We disagree.
 {¶ 14} We consider an appeal from summary judgment under a de novo standard of review.[2] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[3] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can only reach one conclusion which is adverse to the non-moving party.[4]
 {¶ 15} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[5] The movant may satisfy this burden with or without supporting affidavits, and must "point to evidentiary materials of the type listed in Civ.R. 56(E)."[6] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will only be appropriate if the non-movant fails to establish the existence of a genuine issue of material fact.[7] In satisfying its burden, the non-movant "may not rest upon the mere allegations or denials of his pleadings, but his response by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."[8]
 {¶ 16} In Kensington's brief in opposition to Columbian's summary judgment and in its brief to this court, Kensington argues that New York law precludes Columbian from both retaining the commitment and loan processing fees pursuant to paragraph 16 of the commitment agreement, and obtaining a judgment for costs pursuant to paragraph 15. For the following reasons, we are unpersuaded by Kensington's argument.
 {¶ 17} The Ohio Supreme Court set forth the factors to be considered in determining the validity of a liquidated damages clause.[9] The court held that clauses in contracts providing for reasonable liquidated damages are enforceable so long as reasonable compensation is the legitimate objective of such provisions.[10] The court set forth the specific criteria to be used in evaluating the legitimacy of a liquidated damages clause. The court stated:
"Where the parties have agreed on the amount of damages, ascertained byestimation and adjustment, and have expressed this agreement in clear andunambiguous terms, the amount so fixed should be treated as liquidateddamages and not as a penalty, if the damages would be (1) uncertain as toamount and difficulty of proof and if, (2) the contract as a whole is notso manifestly unconscionable, unreasonable, and disproportionate inamount as to justify the conclusion that it does not express the trueintention of the parties, and if (3) the contract is consistent with theconclusion that it was the intention of the parties that damages in theamount stated should follow the breach thereof."
 {¶ 18} In order to determine the legitimacy of a clause, which limits the liability of one party, courts must consider the facts surrounding the contract and whether its goal is to reasonably compensate for the actual damages flowing from a breach of the contract.[11]
 {¶ 19} In the case at bar, paragraph 16 containing the liquidated damages clause states:
"If borrower has not fulfilled all conditions precedent to closing,this agreement shall terminate and all fees held by lender shall beretained by lender as liquidated damages and lender and borrower shallhave no further duties or obligations to each other hereunder."[12]
 {¶ 20} Kensington admits that the facts are not disputed, which presumes the validity of the liquidated damages clause. Kensington, instead attacks the judgment on Columbian's counterclaim for $7,808. However, Kensington's position is belied by the actual and ordinary meaning of the agreement. Paragraph 15 of the loan agreement states in pertinent part as follows:
"The loan is to be made without cost to lender, and borrower'ssubmission of this application shall constitute an undertaking to pay allcosts and expenses associated with the loan whether or not this loancloses. The costs and expenses include but are not limited to the feesand expenses of lender's counsel, charges by any consulting environmentalengineer, recording and transfer fees and taxes, and all other costs andexpenses incurred to satisfy the requirements of this agreement."
 {¶ 21} In construing any written instrument, the primary objective is to ascertain the intent of the parties, and the general rule is that contracts should be construed so as to give effect to the intention of the parties.[13] Contract terms must be given their ordinary meaning, unless such a reading results in manifest absurdity or where some other meaning is clearly evidenced from the face or overall contents of the instrument.[14]
 {¶ 22} A plain reading of paragraph 15 of the loan agreement reveals that it is clear and unambiguous. The clause is not subject to myriad interpretations of its meaning. The logical conclusion is that Kensington was obligated to pay these costs whether the contract was breached or not. This undertaking was a separate and distinct obligation from the consequences of Kensington's breach of the loan commitment; an award on one does not preclude an award on the other; therefore, it does not run afoul of New York's law on liquidation.
 {¶ 23} New York courts have enforced contractual provisions providing that lenders retain commitment and loan processing fees when the loan fails to close.[15] This is consistent with Ohio law.[16] Further, as a matter of law, an award of damages should place the injured party in as good a position as it would have been in the absence of the breach.[17]
A party injured by a breach has the right to expect to be put in as good a position as he would have been in had the contract been performed.[18]
 {¶ 24} Kensington cites several cases to support its position that New York law prohibits actual damages where there is a liquidated damages clause. However, the cases cited are distinguishable from the case at bar. These cases involve liquidated damages and actual damages arising from a single breach of contract. Here, paragraph 16 addresses termination in the event of a failure of conditions precedent to closing, while paragraph 15 provides for Kensington to pay cost regardless of breach of the loan agreement. These are two separate and distinct issues.
 {¶ 25} We conclude pursuant to paragraph 16, Columbian was permitted to retain the commitment and loan fees because it is undisputed Kensington failed to satisfy the conditions precedent to the closing of the loan. Further, pursuant to paragraph 15, Kensington's obligation to pay the costs was incurred upon mere submission of the loan application. Consequently, the trial court properly granted summary judgment in favor of Columbian. Accordingly, Kensington's first assigned error is overruled.
 {¶ 26} In the second assigned error, Kensington argues the trial court erred in failing to grant partial summary judgment in its favor. We disagree.
 {¶ 27} In the exercise of its sound discretion, a court may consider a motion for summary judgment, which has been filed, without express leave of court, after the action has been set for pre-trial or trial.[19]
Under Civ.R. 56, the trial court has the discretion of allowing motions after the time allowed for their filing. Since the acceptance of the motion is by the grace of the court, the decision to accept, therefore, is itself by leave of court.[20]
 {¶ 28} On March 13, 2000, the trial court held a case management conference where it set a dispositive motion deadline for August 1, 2000, and a trial date for October 31, 2000. The record reveals on August 1, 2000, Columbian filed its motion for summary judgment. Thereafter, on September 1, 2000, Kensington, without leave of court and without an explanation for its late filing, submitted a brief in opposition styled as a cross motion for partial summary judgment as to certain questions of contract interpretation.
 {¶ 29} In the instant case, the trial court had established a deadline for filing dispositive motions and had designated a date for trial. Since the deadline for filing dispositive motions had passed and a trial date was set, Kensington was required to obtain leave of court before filing their motion for partial summary judgment. This they failed to do. Pursuant to Civ.R. 56, the trial court had discretion to strike Kensington's motion. Accordingly, Kensington's second assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., J., and Gallagher, J., Dissents. (See AttachedDissenting Opinion.)
[1] Affidavit of Christine L. Cawley, Vice President, Investments at Columbian attached to Columbian's Motion for Summary Judgment.
[2] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[3] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[4] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[5] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[6] Id. at 292.
[7] Id. at 293.
[8] Civ.R. 56(E); See Dresher.
[9] Samson Sales, Inc. v. Honeywell, Inc. (1984), 12 Ohio St.3d 27.
[10] Samson, supra, citing the case of Jones v. Stevens (1925),112 Ohio St. 43.
[11] Samson, supra; Nationwide Mutual Fire Insurance Co. v. Sonitrol
(1996), 109 Ohio App. 3d 474; Cad Cam, Inc. v. Underwood (1987),36 Ohio App. 3d 90; Whitmer v. Great Lakes Cary Corp., (June 16, 1994) Cuyahoga App. Nos. 64931 and 64932.
[12] Loan Agreement Paragraph 16(a).
[13] Aultman Hosp. Assn. v. Community Mut. Ins. Co. (1989),46 Ohio St.3d 51, 53.
[14] Alexander v. Buckeye Pipe Line Co. (1978), 53 Ohio St.2d 241, quoted in Shifrin v. Forest City Enterprises (1992), 64 Ohio St.3d 635,638.
[15] Ford M Development Corp. v. Inland Credit Corp. (1976)54 A.D.2d 862, 388 N.Y.S.2d 604.
[16] See Florence v. Tri-State Savings Loan Co., (April 8, 1974) 1st Dist. No. C-73455; In re Graham Square, Inc., (6th Cir. 1997)126 F.3d 823, 829.
[17] See F. Enterprises, Inc. v. Kentucky Fried Chicken Corp. (1976)47 Ohio St.2d 154; Homes by Calkins, Inc. v. Fisher (1993)92 Ohio App.3d 262.
[18] Restatement of the Law 2d, Contracts (1981), 102-103, Section 344.
[19] Indermill v. United Savings (1982), 5 Ohio App.3d 243, paragraph one of the syllabus; Brandyberry v. Owens (Aug. 16, 1989), Clark App. No. 2542, at 5 citing Sellers v. Wolff (Nov. 13, 1985), Greene App. No. 85-CA-30.
[20] Juergens v. Strang Klubnik Assocs., Inc. (1994),96 Ohio App.3d 223, 234.
 DISSENTING OPINION